**STATE of Maine**

v.

**Larry W. WINCHENBACH.**

Supreme Judicial Court of Maine.

Argued Nov. 8, 1985.

Decided Dec. 5, 1985.

John R. Atwood, Dist. Atty., Patricia Worth, Asst. Dist. Atty., Wiscasset, for plaintiff.

Paul A. Weeks, (orally), Woolwich, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, and SCOLNIK, JJ.

McKUSICK, Chief Justice.

After a jury trial the Superior Court (Lincoln County) convicted defendant Larry Winchenbach of burglary, 17–A M.R.S.A. § 401 (Class C); unauthorized use of property, 17–A M.R.S.A. § 360 (Class D); operating after revocation, 29 M.R.S.A. § 2298 (Class C); passing a roadblock, 29 M.R.S.A. § 2501–A(4) (Class C); and eluding an officer, 29 M.R.S.A. § 2501–A(3) (Class D). On appeal, we affirm his convictions on all five counts.

### I. *The Evidence*

On March 9, 1984, defendant was on furlough from the Maine State Prison. He spent the afternoon and evening drinking heavily at his mother's home in Waldoboro.

At his trial defendant testified that the last thing he could remember was getting into a car with friends at around 8:00 p.m. to drive to a bar in Damariscotta. Just after 11:00 p.m. a Damariscotta police officer drove past a hitchhiker standing at the intersection of Church and Chapman Streets, very close to the Waldo Waltz home and garage. Very shortly thereafter the officer received a call over his radio alerting him that someone had just entered the closed Waltz garage and had stolen a red and white pickup truck. Spotting the truck going east on business route 1, he turned on his blue flashing lights and siren and gave chase to the pickup. The driver of the truck refused to stop. A state trooper set up a roadblock across the highway ahead of the truck, but the truck drove around the roadblock. The state trooper then jumped into his car and joined the chase. The two officers attempted to use their cars as a rolling roadblock to slow the truck down; as they pulled alongside the truck the driver appeared to try to run them off the road. The chase ended in a collision between the pickup and the Damariscotta cruiser. The driver of the truck jumped out and ran, but the police officers caught and arrested him. He was identified as defendant Larry Winchenbach. The Damariscotta police officer identified defendant as the man he had seen hitchhiking near the Waltz garage just before the theft of the truck.

■ Defendant contends that there was insufficient evidence to convict him of the offenses charged. Specifically, he asserts that the State failed to prove that he was not authorized to enter the Waltz garage or that he was the driver of the truck chased and stopped by police. Review of the record demonstrates that the jury had before it ample evidence of defendant's guilt of the crimes charged. Mr. Waltz testified that he did not know defendant and that friends and acquaintances did not enter his garage at a late hour when the doors were closed. The Damariscotta police officer identified defendant as the man he had

seen only 200 feet from the Waltz garage minutes before the burglary and theft. Furthermore, that same officer and the state trooper involved in the chase testified that, from the time the high-speed chase began to the time they tackled the man who ran from the truck, they saw only one suspect, namely, defendant. Finally, defendant, after being advised of his rights, said to the arresting officers with an obscene expletive: "I broke into the guy's garage and took it," i.e., the pickup truck. Defendant explained to the officers his reason for the break-in and theft: "You guys wouldn't give me a ride. At least I'm warm." Obviously, from the evidence the jury could rationally have found beyond a reasonable doubt all the elements of the five crimes of which defendant was convicted. *State v. Durgan,* 467 A.2d 165, 166 (Me.1983).

## II. *Denial of Motion for Change of Counsel and Continuance*

Defendant next argues that the presiding justice erred in denying his motion for new counsel. On the first day of trial, just before jury selection was to begin, defendant told the justice that he was dissatisfied with his court-appointed attorney and that he wanted a continuance in order to retain a lawyer on his own. Defense counsel told the court that the attorney-client relationship between himself and defendant had deteriorated to the point that cooperation was difficult. Defendant himself added that he did not think his attorney had handled his case properly and that the attorney had not done anything to show what he had been doing to prepare his defense. The justice denied the motion, finding no justification for a continuance.

■ That decision "rest[ed] entirely within the sound discretion of the presiding trial justice." *State v. Stinson,* 424 A.2d 327, 332 (Me.1981). "[A]n abuse of discretion warranting reversal only arises if 'palpable error' or 'apparent injustice' is made to appear." *Id.* (quoting *State v. Hume,* 146 Me. 129, 134, 78 A.2d 496, 500 (1951)).

Furthermore, "[a] court need not tolerate unwarranted delays, and, if in the sound discretion of the court the attempted exercise of choice is deemed dilatory or otherwise subversive of orderly criminal process, the court may compel a defendant to go to trial even if he is not entirely satisfied· with his designated attorney." *State v. Ayers*, 464 A.2d 963, 966 (Me.1983). "The United States Supreme Court has recently held that the Sixth Amendment does not guarantee a 'meaningful relationship' between an accused and his counsel." *Ayers*, 464 A.2d at 966–67 (quoting *Morris v. Slappy*, 461 U.S. 1, 13, 103 S.Ct. 1610, 1617, 75 L.Ed.2d 610 (1983)). It is only when there is an "unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' " that there is a violation of the right to the assistance of counsel. *Morris v. Slappy*, 461 U.S. at 11–12, 103 S.Ct. at 1616 (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964)).

■ In the case at bar the record shows that defense counsel had been working on the case for six months and that he had prepared for trial by filing three pretrial motions and obtaining discovery from the State. On the record the presiding justice stated that to his knowledge defense counsel was a competent lawyer. Most importantly, defense counsel told the court that although during the four months prior to trial defendant had shown some interest in retaining his own lawyer, defendant at all times had instructed defense counsel to continue preparing for trial until he instructed him otherwise. Apparently defendant had no reason for wanting new

counsel and a continuance other than as a device for delaying trial. There is no showing whatever that defendant suffered any injustice by continuing through trial with his original appointed attorney. In fact, defendant never again complained about the quality of the representation he received from his counsel, who has continued to represent him through this appeal. Since "[u]nfounded requests for the appointment of new counsel on the virtual eve of trial should not become a vehicle for achieving delay," *Ayers*, 464 A.2d at 967, it was well within the presiding justice's discretion to deny defendant's motion.

### III. *Instruction on "Reckless Rate of Speed"*

Defendant's next contention on appeal is that the presiding justice erred in instructing the jury on the offense of eluding an officer, 29 M.R.S.A. § 2051–A(3).[1] Specifically, defendant points to the justice's failure to define the phrase "reckless· rate of speed" and his general instruction to the jury that "any term that I use or word that I use, if I don't give you a specific definition for those words, they have their ordinary commonsense English language meaning."

■ Defendant contends that the "ordinary commonsense English language meaning" of the phrase "reckless rate of speed" is not its section 2501–A(3) meaning. Instead, he contends that the correct instruction to the jury should have incorporated the definition of "recklessly" as established by the legislature in 17–A M.R.S.A. § 35.[2] We disagree. Section 35 of title 17–A defines culpable states of mind

---

1. 29 M.R.S.A. § 2501–A(3) (Supp.1985–1986) reads in pertinent part:

    Whoever, after being arrested or signaled to stop, attempts to elude a law enforcement officer by driving a vehicle at a *reckless rate of speed* which results in a high-speed chase between the operator's vehicle and any law enforcement vehicle using a blue light or siren is guilty of a Class D crime.
    (Emphasis added)

2. 17–A M.R.S.A. § 35 (1983), entitled "Definition of culpable states of mind," reads in pertinent part:
    3. "Recklessly."
    A. A person acts recklessly with respect to a result of his conduct when he consciously disregards a risk that his conduct will cause such a result.
    B. A person acts recklessly with respect to attendant circumstances when he consciously disregards a risk that such circumstances exist.

for purposes of the offenses of the Code. In contrast, the eluding-an-officer statute, section 2501-A(3) of title 29, uses the adjective "reckless" to describe a rate of speed. In spite of the fact that both title 17-A and title 29 happen to use the same base word "reckless" as an adverb and adjective, respectively, we can find no reason to ascribe to the legislature an intent to use the identical meaning in both very different contexts. We find no error in the court's failure to give the jury a specific definition of the commonplace term "reckless rate of speed." *Cf. State v. Merrifield*, 478 A.2d 1131, 1133 (Me.1984) (no need to define "genitals"); *State v. Seaburg*, 154 Me. 162, 178, 145 A.2d 550, 559 (1958) (no need to define "relationship").

■ Even if there were error, since defendant failed to make any objection to the jury instructions at trial, we must review his belated contention under the obvious error standard of M.R.Crim.P. 52(b). *State v. Spearin*, 477 A.2d 1147, 1156 (Me. 1984); M.R.Crim.P. 30(b); *see also* 1 Cluchey & Seitzinger, *Maine Criminal Practice* § 30.5 (1985). In order to reach the threshold of obvious error, the justice's omission of a specific definition of "reckless rate of speed," when viewed in light of the charge as a whole, must be so "highly prejudicial to the defendant and so taint[ ] the proceeding as virtually to deprive the [defendant] of a fair trial." *State v. Pierce*, 438 A.2d 247, 252 (Me.1981). In this case, without the slightest question, defendant's contention fails to reach that threshold. Defendant never suggested to the jury that the pickup truck involved in the police encounter was driven at a non-reckless rate of speed. Rather, defendant's sole defense was that he was not the driver of the truck at the time of the encounter. Even if the jury had been instructed as to the 17-A M.R.S.A. § 35 definition of "recklessly" as defendant now urges, it would almost certainly have made

no difference whatever in the jury's verdict. *A fortiori*, defendant was not deprived of any substantial right.

## IV. *Consecutive Sentences*

Finally defendant contends that the presiding justice erred by imposing consecutive sentences upon him pursuant to 17-A M.R.S.A. § 1256 (1983 & Supp.1985-1986). Defendant was sentenced to five years for burglary, 364 days for unauthorized use of property, and five years for operating a vehicle after revocation of his license, all to be served concurrently. Those three sentences were to be served consecutively with sentences of five years for passing a roadblock[3] and 364 days for eluding an officer, both of which latter sentences were to be served concurrently with one another.

■ The imposition of consecutive sentences is within the discretion of the sentencing judge. *State v. Bunker*, 436 A.2d 413, 418 (Me.1981). Defendant was subject to consecutive sentences for at least two independent reasons: (1) he committed the offenses while on furlough from Maine State Prison, 17-A M.R.S.A. § 1256(2)(B), and (2) "the seriousness of [his] criminal record," as the sentencing justice found, "require[d] a sentence of imprisonment in excess of the maximum available for the most serious offense." Nonetheless, defendant argues that consecutive sentences are prohibited in the circumstances of this case by 17-A M.R.S.A. § 1256(3)(B), which reads:

3. A defendant may not be sentenced to consecutive terms for crimes arising out of the same criminal episode when:

. . . . .

B. *One crime consists only of a* conspiracy, attempt, solicitation or other form of preparation to commit, or *facilitation of, the other;*

. . . .

---

3. The judgment on Count 3 (passing a roadblock), after imposing a 5-year sentence, erroneously suspended all but "2 years on Ct. 2." The

Superior Court obviously intended the suspension to apply to Count 3.

(Emphasis added) Defendant's only argument is that his burglary at the Waltz garage, his unauthorized use of the pickup truck, and his operating after revocation all "facilitated" his commission of the crimes of passing a roadblock and eluding an officer.

In order to determine whether one crime facilitated another, we properly should focus on "the purpose for which the defendant engaged in criminal conduct." *State v. Bunker*, 436 A.2d at 419. One of the purposes of the sentencing statute is to prevent consecutive sentences for crimes that were committed in a single course of conduct during which there was no substantial change in the nature of the criminal objective. *Id.* For example, in *Bunker*, we held that consecutive sentences for kidnapping and rape could not be imposed on the defendant who kidnapped a young girl for the purpose of raping her.

Applying the *Bunker* purpose test to the present case, we reject defendant's argument. His purpose in burglarizing the Waltz garage and stealing the truck was not to engage in a high-speed chase with police. As he himself told the police officers, he stole the truck because he wanted a warm ride on a cold night. Once on the road in the truck, his criminal objective changed from stealing the truck to escaping capture by the officers. Although his successive criminal objectives were closely related in time, the sentencing justice could find that they involved different motivations. On this record, the presiding justice did not abuse his discretion by imposing consecutive sentences.

On appeal defendant has failed to identify any error in the five convictions arising out of his criminal undertakings of March 9, 1984, or in the sentences imposed therefor. Therefore, the entry is:

Judgment on Count 3 corrected to eliminate an erroneous reference to Count 2, and as so amended, all judgments of conviction affirmed.

All concurring.