2003 ME 110

**STATE of Maine**

v.

**Randall HORR.**

Supreme Judicial Court of Maine.

Argued: May 13, 2003.
Decided: Sept. 4, 2003.

Stephanie Anderson, District Attorney, Matthew Tice, Asst. Dist. Atty. (orally), Portland, for State.

Mary Davis, Esq. (orally), Tisdale & Davis, P.A., Portland, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

CLIFFORD, J.

[¶ 1] Randall Horr appeals from the judgments of conviction entered following a jury trial in the Superior Court (Cumberland County, *Delahanty, J.*), and from the corresponding sentences imposed for those convictions. Horr was found guilty of being an habitual motor vehicle offender (Class C) in violation of 29–A M.R.S.A. § 2557(2)(B) (1996 & Supp.2002),[1] operating under the influence (OUI) (Class C) in violation of 29–A M.R.S.A. § 2411(1) (1996),[2] driving to endanger (Class E) in

---

1. Title 29–A M.R.S.A. § 2557(2)(B) indicates that a violation of this section is treated as a Class C crime if:
    1. The person has one or more convictions for operating after revocation under this section or under former Title 29, section 2298 within the previous 10 years; or
    2. The person has one or more convictions for violating section 2411 or former Title 29, section 1312–B within the previous 10 years.

2. Title 29–A M.R.S.A. § 2411(1) provides:
    1. **OFFENSE.** A person commits OUI, which is a Class D crime unless otherwise provided, if that person operates a motor vehicle:
        A. While under the influence of intoxicants; or
        B. While having a blood-alcohol level of 0.08% or more.

violation of 29–A M.R.S.A. § 2413(1) (1996),[3] theft by unauthorized use of property (Class D) in violation of 17–A M.R.S.A. § 360(1)(A) (1983),[4] and attaching false motor vehicle plates (Class E) in violation of 29–A M.R.S.A. § 2104(1) (1996).[5] Contending that his convictions should be set aside, Horr asserts that a particular exhibit, containing the totality of his driving record, was improperly given to the jury in violation of a prior ruling by the trial court. He also contends that the consecutive sentences he received are illegal. The record does not support Horr's contention that there was a deviation from any procedure established by the court or that any improperly prejudicial information was turned over to the jury, and we find no error or abuse of discretion in the sentences imposed on Horr. Accordingly, we affirm both the convictions and the sentences.

[¶ 2] In November of 2001, Horr was residing with his sister in Windham. His sister owned a 1992 Buick LeSabre, and she had a Ford Thunderbird parked on her lawn, which she had agreed to sell on behalf of a friend. In the early morning hours of November 19, 2001, Horr removed a license plate from his sister's LeSabre and attached it to the Thunderbird. He drove that vehicle to Portland. He was intoxicated, and his license had been suspended for being a habitual offender. A motorist, whose vehicle Horr nearly struck, called the Portland Police and described the vehicle.

[¶ 3] A police officer followed the car Horr was operating into an apartment complex parking lot where he found Horr standing outside the passenger door pointing to the apartment building. Horr claimed that an individual named Danny Libby had run inside the building, but no Danny Libby could be located, and Horr was arrested and charged, in a five-count indictment, with being an habitual motor vehicle offender (Count I); operating under the influence (Count II); driving to endanger (Count III); theft by unauthorized use of property (Count IV); and attaching false motor vehicle plates (Count V).

[¶ 4] At the outset of Horr's jury trial, the trial court agreed to redact from the indictment any references to Horr's prior record when the indictment was read to the jury. To comply with this ruling, and to keep the jury from knowing the details of Horr's substantial motor vehicle and criminal history, the parties agreed to introduce only the top page of the Secretary of State's certification that contained only identifying information and the fact that Horr's license was under revocation.

What the State had identified as the top page of the Secretary of State's certificate, was marked for identification as Exhibit # 1, and was ultimately admitted in evi-

---

3. Pursuant to section 2413(1), "[a] person commits a Class E crime if, with criminal negligence as defined in Title 17–A, that person drives a motor vehicle in any place in a manner that endangers the property of another or a person, including the operator or passenger in the motor vehicle being driven." 29–A M.R.S.A. § 2413(1).

4. At the time Horr committed the crime, theft by unauthorized use of property occurred if, "[k]nowing that he does not have the consent of the owner, he takes, operates or exercises control over a vehicle, or, knowing that a vehicle has been so wrongfully obtained, he rides in such vehicle[.]" 17–A M.R.S.A. § 360(1)(A).

5. Title 29–A M.R.S.A. § 2104(1) (1996) states:
    1. **FALSE PLATES.** A person commits a Class E crime if that person attaches or permits to be attached to a vehicle a registration plate assigned to another vehicle or not currently assigned to that vehicle.

dence. At the end of the trial, Horr was found guilty on all five counts.

[¶ 5] Taking note of Horr's serious criminal record, and relying on the provisions of 17–A M.R.S.A. § 1256(2)(D) (1983), the court sentenced Horr to five years in prison for Count I, five years for Count II, six months for Count III, and eleven months for Count IV, all to run consecutively to each other. His sentence of six months for Count V was to run concurrently. This appeal by Horr followed.

## I.

[¶ 6] Horr concedes that the trial court set up an acceptable procedure to deal with his prior convictions, to separate his driving record from the cover page of Exhibit # 1, the certificate from the Secretary of State, and to keep that history from the jury. He contends, however, that contrary to that procedure, his entire prior driving record was somehow given to the jury prior to or during its deliberations. Specifically, Horr suggests that the jury was permitted to view not only the Secretary of State's Notice of Revocation of Horr's right to operate a motor vehicle (essential to proof of the habitual offender charge), but in addition, was given the Bureau of Motor Vehicles Review and his SBI report.[6] Horr made no objections about the submission of Exhibit # 1 to the jury.

■ [¶ 7] The record does not support Horr's contention that the details of Horr's unusually lengthy criminal and motor vehicle history were attached to Exhibit # 1, the Notice of Revocation, when it went to the jury room. Horr's attorney was asked to check the exhibits before they were given to the jury prior to the commencement of deliberations, and the attorney made no objection to what went to the jury as Exhibit # 1. If the totality of Horr's driving record were attached to Exhibit # 1, it is reasonable to assume that Horr's attorney would have strenuously objected to those attachments going to the jury. The record reflects that the attorney for the State held the attachments that were removed from Exhibit # 1 before Exhibit # 1 was submitted to the jury. Because Horr's contention that the jury had information on his motor vehicle and criminal history is not supported in the record, he has failed to demonstrate any error in the procedure used.

## II.

[¶ 8] Horr contends that his eleven-year, five-month sentence is illegal. Specifically, he argues that he should have received concurrent sentences pursuant to our decision in *State v. Bunker,* 436 A.2d 413, 419 (Me.1981), and the sentencing limitations found in 17–A M.R.S.A. § 1256(3)(B) & (C) (1983).[7] The State argues that Horr did

---

6. Horr has an extremely unique and detailed driving and criminal history, which was disclosed at his sentencing hearing. He has approximately thirteen convictions for operating under the influence, and thirty-six total suspensions. As the sentencing court noted, "[i]n thirty-two years of being involved with criminal cases on one side of the bench or the other, I don't recall any person with a motor vehicle record like Mr. Horr's." Horr also has prior convictions for theft, drug possession, false public alarm/report, stolen checks, disorderly intoxication, and assault.

7. Title 17–A M.R.S.A. § 1256(3)(C) provides:

  **3.** A defendant may not be sentenced to consecutive terms for crimes arising out the same criminal episode when:

  . . . .

  **C.** The crimes differ only in that one is defined to prohibit a designated kind of conduct generally, and the other to prohibit a specific instance of that conduct . . . .
  Horr relies on the limitation found in section 1256(3)(C), but he provides little elaboration to support his contention that section

not preserve this issue by failing to raise it at the sentencing hearing or in his sentencing memorandum,[8] and that on the merits, the limitation provided by section 1256(3)(B) does not apply to this case.

■ [¶ 9] The appropriateness of a sentence is a matter of discretionary review. *See* 15 M.R.S.A. §§ 2151–2157 (2003). The illegality of a sentence, however, may be raised in a direct appeal as a matter of right, so long as the illegality appears plainly in the record. *State v. Ricker,* 2001 ME 76, ¶ 18, 770 A.2d 1021, 1027.

[¶ 10] In dealing with multiple sentences of imprisonment, the statute favors concurrent, as opposed to consecutive sentences. 17–A M.R.S.A. § 1256(2) (1983 & Supp. 2002) ("The sentences shall be concurrent *unless,* in considering the following factors, the court decides to impose sentences consecutively[.]") (emphasis added). Section 1256(2), however, sets out circumstances that allow a sentencing court to order consecutive sentencing. *Id.* § 1256(2)(A)-(D). Subsection (2)(D) allows the court to impose consecutive sentences when:

> the seriousness of the criminal conduct involved in either a single criminal episode or in multiple criminal episodes or the seriousness of the criminal record of the convicted person, or both, require a sentence of imprisonment in excess of the maximum available for the most serious offense.

17–A M.R.S.A. § 1256(2)(D).

■ [¶ 11] Even if the circumstances would otherwise justify the imposition of consecutive sentences pursuant to section 1256(2), sections 1256(3)(A)-(D) set out cir- cumstances when consecutive sentences may not be imposed. *Id.* § 1256(3)(A)-(D). Specifically, a defendant may not receive consecutive sentences for "crimes arising out of the same criminal episode" when "[o]ne crime consists only of a ... facilitation of, the other[.]" *Id.* § 1256(3)(B). *See State v. Prentiss,* 557 A.2d 619, 621 (Me.1989) ("Section 3 describes the circumstances in which consecutive sentences are prohibited."). Section 1256(3)(B) was intended "to prevent 'consecutive sentences for offenses which were committed as a part of a single course of conduct during which there was *no substantial change in the nature of the criminal objective.'*" *Bunker,* 436 A.2d at 419 (quoting Final Report of the National Commission on Reform of Federal Criminal Laws § 3204, Comment (1971)). Thus, the analysis must focus "upon the purpose for which the defendant engaged in the criminal conduct." *Id.* Unintentional crimes, however, have no criminal purpose and are therefore excluded from the limitation provided by section 1256(3)(B). *State v. Pineo,* 2002 ME 93, ¶ 13, 798 A.2d 1093, 1098–99.

[¶ 12] The State contends that the Superior Court properly ordered Horr to serve consecutive sentences because his criminal record is so serious, and that Horr's conviction on Counts I (habitual motor vehicle offender), II (operating under the influence), and III (driving to endanger) are for unintentional crimes. Accordingly, the State argues that there was nothing to prevent the sentencing court from imposing consecutive sentences on Horr who had such a serious criminal record.[9] We agree.

---

1256(3)(C) applies to the circumstances of this case to prohibit consecutive sentencing.

8. Horr failed to explicitly raise the section 1256(3)(B) argument at sentencing. Although all sentencing issues should be raised at sentencing hearings, the sentencing court in this case was well aware of the section 1256(3)(B) issue and addressed it comprehensively.

9. *See* section 1256(2)(D) for those unintentional crimes that arose from this criminal episode.

[¶ 13] No culpable state of mind is required to establish the offense of operating under the influence of intoxicating liquor. *State v. Poole*, 568 A.2d 830, 832 (Me.1990) (observing that "[a]n OUI conviction requires no proof of mens rea"); *State v. Longley*, 483 A.2d 725, 732 (Me. 1984) ("No culpable state of mind is required to establish the offense of operating under the influence of intoxicating liquor or drugs."). A defendant likewise does not have to intend to drive to endanger in order to be convicted of that crime; only criminal negligence must be proven. 29-A M.R.S.A. § 2413(1) ("A person commits a Class E crime, if *with criminal negligence* . . . that person drives a motor vehicle in any place in a manner that endangers the property of another or a person . . . .") (emphasis added).[10] To violate the habitual offender statute, the defendant need only operate a motor vehicle on a public way after having received proper notice of revocation. 29-A M.R.S.A. § 2557(1). No proof of a mens rea is required.[11] Accordingly, because Counts I, II, and III involve convictions for unintentional crimes, the sentencing court acted within its discretion when it imposed consecutive sentences on those counts.[12] *See Pineo*, 2002 ME 93, ¶ 13, 798 A.2d at 1098 ("As the focus on criminal purpose might suggest, all of the caselaw discussing [section 1256(3)(B) ] has dealt with intentional crimes.").

[¶ 14] Horr further argues that the sentence for the conviction of Count IV, theft by unauthorized use of property, was im-properly made to run consecutively to the sentences imposed on Counts I, II, and III. Horr contends that the limitation provided by section 1256(3)(B) should apply to the sentence for theft, an intentional crime.

[¶ 15] As a general principle, we have recognized that "section 1256(3)(B) should be interpreted narrowly" because it limits the otherwise wide discretion of the sentencing court to impose consecutive sentences in appropriate situations. *Pineo*, 2002 ME 93, ¶ 14, 798 A.2d at 1099.

[¶ 16] Section 1256(3)(B) provides that a defendant may not be sentenced to consecutive terms for crimes arising out of the same criminal episode when "[o]ne crime consists only of a conspiracy, attempt, solicitation or other form of preparation to commit, or facilitation of, the other[.]" 17-A M.R.S.A. § 1256(3)(B).

[¶ 17] "In order to determine whether one crime facilitated another, we properly should focus on 'the purpose for which the defendant engaged in criminal conduct.'" *State v. Winchenbach*, 501 A.2d 1282, 1287 (Me.1985) (quoting *Bunker*, 436 A.2d at 419). In *Winchenbach*, the defendant was given concurrent sentences for burglary, unauthorized use of property, and operating a vehicle after revocation of his license, and those sentences were to be served consecutively with sentences imposed for passing a road block, and eluding an officer. *Id.* at 1286. Noting that consecutive sentences are reviewed for

---

**10.** Criminal negligence involves the failure to be aware of a risk. *See* 17-A M.R.S.A. § 35(4) (1983).

**11.** Horr does not dispute that he was operating the vehicle on a public way or that he had received notice of his revocation.

**12.** Ordinarily, when a court imposes consecutive sentences for intentional crimes, we must engage in a further inquiry, mandated by sec-tion 1256(3)(B), to determine whether one crime "facilitated" commission of the other. *Compare, e.g., State v. Mahan*, 1998 ME 143, ¶ 9, 711 A.2d 1314, 1317 (comparing concealed weapon charge to trespass), *with State v. Fleming*, 644 A.2d 1034, 1035–36 (Me. 1994) (comparing attempted murder to gross sexual assault). Because the crimes listed in Counts I–III are unintentional, however, we need not undertake this additional step.

abuse of discretion, we rejected Winchenbach's argument that his consecutive sentences were prohibited by section 1256(3)(B), and affirmed the sentences. Although Winchenbach's criminal acts were closely related in time, we concluded that the sentencing court was free to find that they involved "different motivations." *Id.* at 1287.

■ [¶ 18] In this case, the sentencing court was not compelled to find that the only purpose of Horr's theft of the vehicle was to facilitate his violation of the habitual offender law, and the statutes prohibiting OUI and driving to endanger. *Id., see Pineo,* 2002 ME 93, ¶ 13, 798 A.2d at 1098–99 (noting unintentional crimes have no criminal purpose).

The entry is:

Judgment affirmed.