2012 ME 129

**STATE of Maine**

v.

**Randall HOFLAND.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Oct. 10, 2012.

Decided: Nov. 20, 2012.

Randall Hofland, pro se appellant.

Geoffrey Rushlau, District Attorney, Prosecutorial District Six, Rockland, for appellee State of Maine.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, and JABAR, JJ.

PER CURIAM.

[¶ 1] Randall Hofland appeals from a judgment of conviction entered in the trial court (*Hjelm, J.*) finding him guilty of four counts of criminal threatening with a dangerous weapon (Class C), 17–A M.R.S. §§ 209, 1252(4) (2011); eleven counts of criminal restraint with a dangerous weapon (Class C), 17–A M.R.S. §§ 302(1)(A)(1), 1252(4) (2011); twenty-two counts of kidnapping (Class A), 17–A M.R.S. §§ 301(1)(A)(2), 301(1)(B)(1), 1252(4) (2011); one count of burglary (Class A), 17–A M.R.S. § 401(1)(B)(1) (2011); and one count of criminal restraint (Class D), 17–A M.R.S. § 302(1)(A)(1). The court imposed sentences of thirty years and five years, to be served consecutively, and sentences of ten years and 364 days, to be served concurrently. Hofland now appeals, raising numerous issues. We affirm the judgment of conviction.

## I. BACKGROUND

[¶ 2] On the evening of October 23, 2008, Hofland was involved in an altercation with law enforcement officers at a roadblock during which officers allege Hofland pulled a gun and then sped off. Hofland spent the next eight days in the woods evading law enforcement.

[¶ 3] When he emerged from hiding on October 31, 2008, Hofland walked into the Stockton Springs Elementary School gymnasium with a loaded handgun and attempted to forcibly gather children and bring them into a school bathroom. When school officials interceded, Hofland pointed his gun at them. Hofland then forced his way into a classroom full of fifth grade students and held those students against their will until law enforcement officials arrived.

[¶ 4] On December 30, 2008, the Waldo County grand jury indicted Hofland for his conduct at the school. He entered a plea of not guilty and later amended that plea to add a plea of not criminally responsible by reason of insanity.

[¶ 5] On June 11, 2009, Attorney Jeffrey Toothaker was appointed to represent Hofland. At a motion hearing held on June 26, 2009, Hofland argued that the Maine and United States Constitutions afforded him both the right to represent himself and the right to representation by court-appointed counsel. Hofland asserted that he would act as lead counsel and Attorney Toothaker would work for him.

[¶ 6] In light of his insistence on taking a lead role in his own defense, the court asked Hofland about his educational background and his familiarity with legal proceedings. The court informed him that there were risks associated with self-representation, that he would be held to the same standards as an attorney, that he would not receive legal advice from the court, and that the prosecutor was a trained and experienced attorney. Hofland indicated that he understood and was making the decision to proceed as lead counsel voluntarily. Attorney Toothaker also expressed his satisfaction and understanding that Hofland was undertaking the role of lead counsel in a knowing and informed manner.

[¶ 7] In the time between his indictment on December 30, 2008, and his trial in January 2011, Hofland filed well over one hundred motions. The court ad-

dressed motions as they came in, and held testimonial hearings on some of the motions. The majority of the hearings centered on two issues: a motion to suppress all evidence based on Hofland's contention that the October 23, 2008, roadblock was unconstitutional, and a motion to dismiss all charges based on an assertion that his right to a speedy trial had been violated. The court upheld the constitutionality of the roadblock, and found that although the defendant asserted his right to a speedy trial as early as June 2009, the trial was delayed by the "extraordinary number of motions filed by the defendant himself," and that the defendant was not prejudiced by the delay.

[¶ 8] A bifurcated trial began on January 10, 2011, and on January 28 the jury returned its verdict of guilty on all counts except one count of criminal threatening with a dangerous weapon (Class C) on which the jury returned a verdict of not guilty. At the close of evidence, Hofland requested that the jury be instructed on the Second Amendment right to bear arms, but this request was denied. The second phase, regarding criminal responsibility, lasted only two days, and the jury returned a verdict of criminally responsible as to all counts.

[¶ 9] At sentencing, the court merged the twenty-two separate kidnapping charges into eleven charges, reflecting one charge per child present in the classroom. The court then refused to merge the criminal restraint charges with the kidnapping charges, ruling that they were separate offenses. The court imposed sentences of thirty years and five years, to be served consecutively; two other smaller sentences were to be served concurrently. The thirty-year sentence stemmed from the convictions relating to the conduct in the classroom, and the five-year sentence stemmed from the convictions relating to the con-

duct in the gymnasium. Hofland filed this appeal.

## II. DISCUSSION

[¶ 10] Hofland enumerates twenty-five issues in the introductory section of his brief, then addresses ten in the body of his argument, with little correlation between the two. Most of Hofland's arguments center on a theory that numerous state actors, including this Court, conspired to convict him in violation of the Racketeer Influenced and Corrupt Organizations Act. *See* 18 U.S.C.S. §§ 1961–1968 (LexisNexis 2010). These issues are without merit and will not be discussed. We will address the following issues: Whether (A) Hofland was denied his right to a speedy trial, (B) Hofland was denied his right to self-representation, (C) the court erred in denying his request for an instruction on the Second Amendment right to bear arms, (D) the court erred by not dismissing the kidnapping charge because the term "substantial period" was unconstitutionally vague, (E) there was sufficient evidence for the jury to find that Hofland held the children for a "substantial period of time," and (F) the court properly imposed consecutive sentences. All other issues raised by Hofland are without merit and will not be discussed.

### A. Whether Hofland Was Denied His Right to a Speedy Trial

[¶ 11] "We review for abuse of discretion a court's judgment on a motion to dismiss a charge for failure to provide a speedy trial." *State v. Teachout,* 2011 ME 37, ¶ 4, 16 A.3d 155. "A speedy trial analysis requires application of a delicate balancing test that takes into account all of the circumstances of the case at hand." *State v. Drewry,* 2008 ME 76, ¶ 12, 946 A.2d 981 (quotation marks omitted). The balancing test focuses on four factors an-

nounced by the United States Supreme Court: "Length of delay, the reason for delay, the defendant's assertion of his right [to a speedy trial], and prejudice to the defendant." *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). An analysis of the four *Barker* factors is only necessary if a presumption of prejudice is created by a lengthy delay. *State v. Murphy,* 496 A.2d 623, 627 (Me. 1985).

██ [¶ 12] In denying the motion to dismiss, the trial court determined that the length of delay was sufficient to create a presumption of prejudice, and therefore analyzed the case using the four *Barker* factors. The court found that although Hofland asserted his rights early in the process, Hofland was the primary reason for the delay, and that he failed to demonstrate any prejudice from the delay. Thus, the court properly analyzed Hofland's claim of violation of his right to a speedy trial and did not abuse its discretion in denying the motion to dismiss. *See Barker,* 407 U.S. at 530–32, 92 S.Ct. 2182; *Murphy,* 496 A.2d at 628–29.

### B. Whether Hofland Was Denied His Right to Self–Representation

[¶ 13] Hofland argues that his right to self-representation was violated because the court refused to allow hybrid representation whereby he would proceed in a self-represented capacity and with court-appointed counsel. Although the court allowed Hofland to proceed as lead counsel with Attorney Toothaker as standby counsel, Hofland contends that this arrangement fell short of what is constitutionally required. Under Hofland's theory of hybrid counsel, both he and his court-appointed counsel would have an opportunity to present opening statements, question witnesses, and engage in closing arguments.

██ [¶ 14] Article I, section VI of the Maine Constitution states in relevant part that "[i]n all criminal prosecutions, the accused shall have a right to be heard by the accused and counsel to the accused, or either, at the election of the accused." "The protection afforded by [this provision] is commensurate with that of the [S]ixth [A]mendment to the [F]ederal [C]onstitution." *State v. Gallant,* 595 A.2d 413, 416 (Me.1991). The Sixth Amendment to the Federal Constitution confers not only a right to representation, but a right to self-representation if the defendant so elects. *Faretta v. California,* 422 U.S. 806, 819, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Any decision to proceed with self-representation must be made knowingly and intelligently, with specific knowledge of the dangers associated with such a decision. *Id.* at 835, 95 S.Ct. 2525. Even if a defendant knowingly and voluntarily decides to proceed without counsel, the court may still appoint counsel to serve in a standby capacity. *Id.* at 834 n. 46, 95 S.Ct. 2525.

██ [¶ 15] In *McKaskle v. Wiggins,* the Supreme Court clarified the appropriate roles of the pro se defendant and standby counsel. 465 U.S. 168, 170, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984). As to the defendant, the Court stated:

> A defendant's right to self-representation plainly encompasses certain specific rights to have his voice heard. The pro se defendant must be allowed to control the organization and content of his own defense, to make motions, to argue points of law, to participate in voir dire, to question witnesses, and to address the court and the jury at appropriate points in the trial.

*Id.* at 174, 104 S.Ct. 944. The Court went on to state that standby counsel's participation in the trial *does not violate a de-*

fendant's right to self-representation provided two limits on participation are met. *Id.* at 177–79, 104 S.Ct. 944. "First, the pro se defendant is entitled to preserve actual control over the case he chooses to present to the jury. . . . Second, participation by standby counsel without the defendant's consent should not be allowed to destroy the jury's perception that the defendant is representing himself." *Id.* at 178, 104 S.Ct. 944. This does not, however, confer a right to "hybrid" representation. *Id.* at 183, 104 S.Ct. 944 ("*Faretta* does not require a trial judge to permit 'hybrid' representation" where "[a] defendant . . . choreograph[s] special appearances by counsel.").

[¶ 16] In *State v. Bettney*, 529 A.2d 1356, 1356–57 (Me.1987), we recognized that standby counsel can play an appropriate role at trial and held that a defendant's right to self-representation was not violated by standby counsel's participation when the defendant affirmatively acquiesced in that participation. We have not, however, had an occasion to decide whether the Maine Constitution affords the right to hybrid, or dual, representation, as Hofland contends. We now hold that it does not. Courts that have dealt with hybrid arrangements have held that such arrangements are not a Sixth Amendment right and are disfavored. *See, e.g., McKaskle*, 465 U.S. at 183, 104 S.Ct. 944; *United States v. Kosmel*, 272 F.3d 501, 506 (7th Cir.2001) ("[The United States Court of Appeals for the Seventh Circuit] clearly disfavors any form of hybrid representation, because 'it allows a defendant to address the jury, in his capacity as counsel, without being cross-examined, in his capacity as a defendant.'") (quoting *United States v. Oreye*, 263 F.3d 669, 672–73 (7th Cir.2001)); *State v. Mathieu*, 68 So.3d 1015, 1018–19 (La.2011). The protections afforded by article I, section VI of the Maine Constitution are commensurate with the Sixth Amendment of the Federal Constitution, *see Gallant*, 595 A.2d at 416, and therefore, hybrid representation is not a right.

[¶ 17] Further, the record demonstrates that Hofland knowingly and voluntarily decided to proceed in a pro se capacity after being informed by the trial court of the dangers of acting as lead counsel. Hofland's right to self-representation was not violated because Hofland was allowed to choose trial strategy, cross-examine witnesses, call witnesses, and make a closing statement. *See McKaskle*, 465 U.S. at 174, 104 S.Ct. 944; *Faretta*, 422 U.S. at 819, 95 S.Ct. 2525. The fact that he was not allowed to duplicate the arguments and examination did not deprive him of a constitutional right. Finally, the record demonstrates that Hofland acquiesced to any participation by Attorney Toothaker. *See Bettney*, 529 A.2d at 1356–57.

C. Whether the Court Erred in Denying Hofland's Request for an Instruction on His Second Amendment Right to Bear Arms

[¶ 18] We review "jury instructions as a whole for prejudicial error, and to ensure that they informed the jury correctly and fairly in all necessary respects of the governing law." *State v. Martin*, 2007 ME 23, ¶ 5, 916 A.2d 961 (quotation marks omitted). "Further, [w]hen the claimed error is the omission of a particular instruction, we will vacate the judgment only if the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element." *Id.* ¶ 6 (quotation marks omitted).

[¶ 19] The record indicates that the court accurately instructed the jury on the elements of criminal threatening, crim-

inal threatening with a dangerous weapon, self-defense justification as to criminal threatening, criminal restraint, criminal restraint with a dangerous weapon, kidnapping, kidnapping with a dangerous weapon, the voluntary-release defense to kidnapping, and burglary. *Accepting Hofland's* argument that the right to bear arms is an individual rather than collective right, *see District of Columbia v. Heller,* 554 U.S. 570, 592, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008), that right does not constitute a defense to any of the crimes charged, nor does it create reasonable doubt with regard to Hofland's commission of the crimes charged. *See Martin,* 2007 ME 23, ¶¶ 5–6, 916 A.2d 961. Taken as a whole, the instructions accurately and fairly informed the jury in all necessary aspects of the law. *See id.* ¶ 5.

**D. Whether the Court Erred by Not Dismissing the Kidnapping Charge Because the Term "Substantial Period" Was Unconstitutionally Vague**

[¶ 20] Hofland contends that 17–A M.R.S. § 301(2)(C) (2011), which makes it a crime to confine another person without that person's consent for a substantial period of time, is unconstitutionally vague because the term "substantial period" is undefined. "Pursuant to principles of due process, a criminal statute is unconstitutionally vague when it fails to provide sufficient definiteness that an ordinary person can understand what conduct is forbidden and encourages arbitrary and discriminatory enforcement." *State v. Aboda,* 2010 ME 125, ¶ 14, 8 A.3d 719 (quotation marks omitted). "In examining the sufficiency of statutory language, [o]bjective quantification, mathematical certainty, and absolute precision are not required." *State v. Witham,* 2005 ME 79, ¶ 7, 876 A.2d 40 (quotation marks omitted).

[¶ 21] In this instance, the operative terms of 17–A M.R.S. § 301 (2011) are not unconstitutionally vague. Although "substantial period" is open to multiple interpretations, the statute does not encourage arbitrary enforcement and is sufficiently definite to inform a person what conduct is prohibited. *See Aboda,* 2010 ME 125, ¶ 14, 8 A.3d 719.

**E. Whether There Was Sufficient Evidence for the Jury to Find that Hofland Held the Children for a "Substantial Period of Time"**

[¶ 22] Hofland also argues that the evidence was insufficient to demonstrate that he held the children for a "substantial period." When reviewing a jury verdict for the sufficiency of the evidence, we "consider the evidence in the light most favorable to the State to determine whether the trier of fact rationally could have found beyond a reasonable doubt every element of the offense charged." *State v. Smen,* 2006 ME 40, ¶ 7, 895 A.2d 319 (quotation marks omitted).

[¶ 23] We had occasion to interpret the term "substantial period" in *State v. Estes,* where we noted:

The Comment to Section 301 makes clear that the inclusion of the substantial period requirement in the statutory definition of "restrain" was intended to avoid having kidnapping include conduct that was merely incidental to the commission of some other crime against the victim.

418 A.2d 1108, 1113 (Me.1980).

[¶ 24] A thorough review of the record indicates that Hofland entered the Stockton Springs Elementary School with a gun and held a group of students in a classroom as protection. Although the students' confinement lasted less than thirty minutes, viewing this evidence in the light most favorable to the State, a trier of

fact rationally could have found that Hofland restrained the students for a substantial period of time in violation of 17–A M.R.S. § 301. *See Smen,* 2006 ME 40, ¶ 7, 895 A.2d 319.

## F. Whether the Court Illegally Imposed Consecutive Sentences

[¶ 25] Hofland argues that all of his crimes stemmed from a single criminal episode, and therefore the court illegally sentenced him to consecutive sentences. He also argues that the court violated 17–A M.R.S. § 1256(3)(B) (2011) in imposing consecutive sentences. Hofland has not been given leave to present a separate sentencing appeal. "On direct appeal, we will review only the legality, not the propriety, of a sentence." *State v. Hodgkins,* 2003 ME 57, ¶ 5 n. 3, 822 A.2d 1187. Moreover, we "will not consider the legality of a sentence on direct appeal unless a jurisdictional infirmity is shown so plainly as to preclude rational disagreement as to its existence." *Id.* (quotation marks omitted). Hofland's second argument, that the court illegally imposed consecutive sentences in violation of 17–A M.R.S. § 1256(3) (2011), is cognizable on direct appeal. *See State v. Ward,* 2011 ME 74, ¶ 28, 21 A.3d 1033. "We review a sentencing court's imposition of consecutive sentences for an abuse of discretion." *State v. Downs,* 2009 ME 3, ¶ 29, 962 A.2d 950 (quotation marks omitted).

[¶ 26] Pursuant to 17–A M.R.S. § 1256(2)(A), (D) (2011), a court may impose consecutive sentences if "the convictions are for offenses based on different conduct or arising from different criminal episodes," or if "the seriousness of the criminal conduct involved in either a single criminal episode or in multiple criminal episodes ... require[s] a sentence of imprisonment in excess of the maximum available for the most serious offense."

However, the court may not impose consecutive sentences if the convictions arise from the same criminal episode and one crime was completed only to facilitate the commission of the other. 17–A M.R.S. § 1256(3)(B); *State v. Horr,* 2003 ME 110, ¶ 11, 831 A.2d 407. This limitation is interpreted narrowly, however, and "was intended to prevent consecutive sentences for offenses which were committed as a part of a single course of conduct during which there was *no substantial change in the nature of the criminal objective.*" *Horr,* 2003 ME 110, ¶¶ 11, 15, 831 A.2d 407 (quotation marks omitted).

[¶ 27] In this case, the court found as fact that Hofland engaged in two distinct criminal episodes with two distinct criminal objectives: the first, which resulted in a five-year sentence, corresponded to events that occurred in the Stockton Springs Elementary School gymnasium; the second, which resulted in a thirty-year sentence, corresponded to events that occurred in the Stockton Springs Elementary School classroom. As an alternative ground for imposing consecutive sentences, the court also found that the seriousness of the offenses warranted such an imposition. 17–A M.R.S. § 1256(2)(D). The court considered the 17–A M.R.S. § 1256(3) factors prohibiting consecutive sentences, but found that they were inapplicable. These findings are not clearly erroneous, *see State v. Fleming,* 644 A.2d 1034, 1035–36 (Me.1994); *State v. Commeau,* 2004 ME 78, ¶¶ 23–24, 852 A.2d 70, and the court did not abuse its discretion in imposing consecutive sentences pursuant to 17–A M.R.S. § 1256(2)(A). *See Downs,* 2009 ME 3, ¶ 30, 962 A.2d 950.

## III. CONCLUSION

[¶ 28] The record demonstrates that the trial judge proceeded with an abundance of caution in all phases of this case.

The court properly instructed the jury on the relevant law and did not abuse its discretion in denying the motion to dismiss on speedy trial grounds, nor did it act outside its sentencing powers in imposing consecutive sentences. Despite Hofland's contentions, he was not entitled to hybrid representation under the Maine Constitution, he was not entitled to a jury instruction regarding the Second Amendment, and he was not convicted pursuant to an unconstitutionally vague statute. Finally, the evidence was sufficient for a jury to find that he restrained the students for a substantial period of time. Therefore, we affirm the judgment of conviction.

The entry is:

Judgment affirmed.