ALEXANDER, J, concurring.
 

 [¶ 35] I concur with the Court that the sentences imposed on Andrew Bean for what were his tenth and eleventh operating under the influence convictions and a related conviction for possession of a firearm by a felon must be affirmed.
 
 See
 
 Court's Opinion ¶ 34. I do not concur with the Court's conclusion that, although there was no request for findings, the sentencing court erred when it did not reference the standards set in 17-A M.R.S. § 1252-C (2017) in articulating its rationale for imposing the State's recommended sentence.
 
 See
 
 Court's Opinion ¶¶ 28-29. That sentence had been negotiated with Bean, as a sentencing cap, as part of Bean's agreement to plead to the charges at issue.
 

 I. RELEVANT CASE HISTORY
 

 [¶ 36] Before the events which gave rise to the charges leading to the sentences at issue on this appeal, Bean had a serious criminal record. That record included at least
 
 nine
 
 prior operating under the influence convictions, most of which were felonies. His prior record caused Bean to be designated a felon prohibited from possessing firearms by operation of 15 M.R.S. § 393(1)(A-1) (2017).
 

 [¶ 37] On November 21, 2015, Bean, "very obviously intoxicated," was arrested for operating a motor vehicle while under the influence of intoxicants. 29-A M.R.S. § 2411(1-A) (2017). His Intoxilyzer test registered a 0.21 blood alcohol content. Because Bean had a firearm beside him in his vehicle, he was also charged with possession of a firearm by a prohibited person (Class C), 15 M.R.S. § 393(1)(A-1).
 

 [¶ 38] One month later, on December 20, 2015-three days after his indictment for the charges arising from the first arrest-Bean was again arrested for operating under the influence. When stopped, Bean confessed "I'm drunk, just take me to jail." This time his Intoxilyzer test registered a 0.29 blood alcohol content.
 

 [¶ 39] In November 2016, Bean reached an agreement with the prosecutor to plead guilty to two counts of aggravated operating under the influence (Class B), 29-A M.R.S. § 2411(1-A)(D)(2), and one count
 of possession of a firearm by a prohibited person (Class C), 15 M.R.S. § 393(1)(A-1). As part of the plea negotiations, the prosecutor agreed to recommend a sentencing cap of ten years, all but five years suspended, legislatively mandated minimum fines, and a six-year suspension of his right to operate. Bean was free to argue for a lesser sentence on the two Class B aggravated operating under the influence charges.
 

 [¶ 40] After a sentencing hearing at which Bean argued for a lesser sentence, the court imposed a sentence on the two Class B aggravated operating under the influence charges of ten years' imprisonment with all but five years suspended and three years' probation, the sentences to be served concurrently. The court also imposed a concurrent sentence of twenty-one months on the Class C possession of a firearm by a prohibited person charge. The sentence ultimately imposed was consistent with the cap recommended by the State and negotiated as part of the plea arrangement.
 

 II. APPLICATION OF SECTION 1252-C SENTENCING FACTORS
 

 [¶ 41] The Court's opinion accurately identifies several factors properly addressed by the sentencing court in articulating the reasons for its sentence. Court's Opinion ¶ 10. But the Court faults the sentencing court, holding that the court committed error, because it did not articulate what it believed to be the "basic" sentence for Bean's crimes, what it believed to be the "maximum" sentence for Bean's crimes after considering aggravating and mitigating factors, and then apply those factors to determine how much, if any, of the sentence would be suspended and how much probation Bean would receive-the sentencing factors listed in 17-A M.R.S. § 1252-C(1)-(3).
 
 See
 
 Court's Opinion ¶¶ 28-29.
 

 [¶ 42] Subsection (1) of section 1252-C directs that in sentencing "[t]he court shall first determine a basic term of imprisonment by considering the particular nature and seriousness of the offense as committed by the offender." Unfortunately, here, and in most cases involving serious and somewhat unique crimes, there is no body of data to aid in identifying the "basic" term of imprisonment.
 
 [12]
 
 The crimes and the circumstances at issue were unique-tenth and eleventh convictions for felony OUIs, Class B crimes, with an available maximum sentence for each of ten years. Because those crimes constituted separate and serious criminal actions, the court had the capacity to make those sentences consecutive, totaling twenty years.
 
 See
 
 17-A M.R.S. § 1256(2)(A), (D) (2017) (addressing consecutive sentencing).
 

 [¶ 43] No precedent of this Court, no reports, no body of data are available to provide the sentencing court or counsel any idea as to what the "basic" sentence for tenth and eleventh felony OUI convictions, for offenses committed a month apart, should be.
 
 [13]
 
 All the sentencing judge
 would have, all any sentencing judge would have, would be that judge's knowledge and experience with regard to similar situations-two felony OUIs committed within a short time period and presented to the court, together, for sentencing.
 

 [¶ 44] While sentencing for tenth and eleventh felony OUI convictions appears virtually unprecedented, most judges would have had some experience with sentencing for two felony OUIs, usually Class C felonies, committed, as in this case, fairly close together in time. At the time of sentencings involving the sixth and seventh, or seventh and eighth OUI convictions, being sentenced together, experience indicates that common practice in such sentencings is to impose "consecutive maxes"-that is, two five-year terms of incarceration imposed consecutively with no part of the sentence suspended.
 
 See
 

 State v. Horr
 
 ,
 
 2003 ME 110
 
 , ¶¶ 1-5,
 
 831 A.2d 407
 
 (affirming imposition of "consecutive maxes" for Class C OUI and habitual offender violations, plus two lesser offenses in a case involving a single driving event by an individual with a very serious prior criminal record).
 

 [¶ 45] "Consecutive maxes" are supported by experience that repeat offenders, at this level, have demonstrated that, for them, rehabilitation efforts and driving prohibitions, enforced through probation, are a useless exercise. Removal from society, for as long as possible, has become the only alternative available to protect the public.
 

 [¶ 46] The resulting ten-year sentence of incarceration arising from experience-based practice in multiple repeat offender OUI sentencing would have been double the five years of incarceration sentence recommended by the State, as the cap, in this case. Accordingly, had the sentencing judge properly considered and articulated the "basic" sentence for these crimes, based on the limited information and experience available, the court may have been required to reject the plea agreement with the five-year cap as too lenient.
 
 See
 
 M.R.U. Crim. P. 11A(d)-(e). Instead, respecting and deferring to the prosecutor's and defense counsel's experience and understanding of the case, the court appropriately went along with the plea arrangement and accepted the recommended cap.
 

 [¶ 47] Beyond the difficulty of articulating the "basic" sentence and in so doing perhaps embarrassing the prosecutor and defense counsel, there is another difficulty with applying the section 1252-C standards here. Subsection (2) of section 1252-C requires that after the "basic" sentence is identified, a sentencing court must then "determine the maximum period of imprisonment to be imposed by considering all other relevant sentencing factors, both aggravating and mitigating, appropriate to that case." Those standards require articulation of a "maximum" sentence that the court would set after considering aggravating and mitigating factors.
 

 [¶ 48] Like the "basic" sentence, the court could not have properly articulated the maximum sentence it might set because, here, that "maximum" sentence was established by the sentencing cap. That "maximum" sentence set by the cap (ten years total, five years of incarceration) was only one-quarter of the sentence of incarceration that could have been imposed had the maximum sentences on each of the Class B OUIs been imposed and had the sentences been made consecutive.
 

 [¶ 49] Thus, the court could not have forthrightly applied two of the three criteria articulated in section 1252-C. Because of the unique nature of the crimes-tenth and eleventh OUI offenses-in all likelihood the court would have imposed a much higher sentence, had it been considering sentencing as part of an open plea or post-trial, after conviction, without the restriction of the cap.
 

 [¶ 50] The Court holds that the sentencing court erred in failing to articulate the court's view of the "basic" sentence and the "maximum" sentence. Court's Opinion ¶¶ 28-29. That holding, in essence, requires judges, faced with pleas to serious felonies with a cap sentencing recommendation, to sometimes embarrass the parties by criticizing a recommendation as too low and reject the plea agreement. The sentencing judge here did not do that, recognizing that a sentencing agreement may be important for the prosecution, the defense, and crime victims
 
 [14]
 
 who want to resolve the case, sometimes for reasons not apparent to the court, and avoid the tensions, rigors and uncertainty of a trial.
 

 [¶ 51] We have faced similar situations of inadequate articulation of statutory factors, including section 1252-C factors, in sentencing, but without holding that the sentencing court erred. In
 
 State v. Barnard
 
 ,
 
 2003 ME 79
 
 , ¶ 25,
 
 828 A.2d 216
 
 , the defense, on a sentence review appeal, asserted that the sentencing court had considered the sentencing factors in the wrong order in its sentencing discussion. Without addressing the alleged misstatements in sentencing, we found no error, holding that "the resulting sentence, slightly above the mandatory minimum, demonstrates no misapplication of principle."
 

 Id.
 

 The sentencing court's action here, stating its reasoning for its sentence and imposing a sentence that was only one-quarter of the prison term that might have been imposed, was not error and deserves similar treatment.
 

 [¶ 52] In another analogous case, when a sentencing court did not make a statutorily required finding regarding a sentencing factor, and, as here, counsel did not request that the court address the required finding, we affirmed, holding that the sentencing court committed no error.
 
 State v. Commeau
 
 ,
 
 2004 ME 78
 
 , ¶¶ 18-24,
 
 852 A.2d 70
 
 . In
 
 Commeau
 
 , the trial court imposed consecutive sentences on two crimes totaling fifty years.
 
 Id.
 
 ¶ 1. During sentencing, the court did not address a finding required for consecutive sentencing by 17-A M.R.S. § 1256(3)(B) (2017)
 
 [15]
 
 that one crime was not committed to facilitate the other crime.
 
 Id.
 
 ¶¶ 18-19. As here, the applicability of the statutory requirement for sentencing findings was "presented for the first time on appeal."
 
 Id.
 
 ¶ 19.
 

 [¶ 53] Addressing counsel's choice not to request statutorily required findings during or after the sentencing hearing, we observed: "Not requesting findings after the sentence was announced appears a competent tactical choice; a request for findings could have invited adverse findings, fully supported by the record ...."
 
 Id.
 
 ¶ 21 n.10. The same tactical considerations may have applied in this case.
 

 [¶ 54] Reviewing for obvious error,
 
 id.
 
 ¶ 19, we held that consecutive sentencing to "fifty years in prison represents
 
 no error of fact or law
 
 , nor an abuse of discretion."
 
 Id.
 
 ¶ 24 (emphasis added). We should do the same here.
 

 III. POTENTIAL UNANTICIPATED CONSEQUENCES
 

 [¶ 55] The defendant's tactical decision to accept the plea arrangement with the sentencing cap and then appeal when the cap was imposed, arguing failure to articulate the criteria stated in section 1252-C, presents a considerable risk of unanticipated consequences. Had the defendant succeeded in convincing the Court that the sentencing court's failure to articulate the "basic" and the "maximum" sentences was error and that the error was not harmless, the matter would have been remanded to the trial court for resentencing.
 

 [¶ 56] The defendant is correct that on a sentence review, neither we nor the trial court can, on remand, increase a sentence that is subject to appeal.
 
 See
 
 15 M.R.S. § 2156(1-A) (2017). However, on a vacate and remand, if the sentencing court is required to articulate its determination regarding the "basic" sentence and the "maximum" sentence, the court could and perhaps would determine that the recommended cap sentences were unacceptably low. With the determination that the recommended sentence was too low, the court could reject the plea arrangement, allow Bean to withdraw his pleas, and set the matter for trial.
 
 See
 
 M.R.U. Crim. P. 11A(d). After trial, a new, higher sentence likely would be imposed should Bean be found guilty-a virtual certainty considering his own admissions to operating while seriously under the influence.
 

 [¶ 57] The defendant, in his arguments, cites
 
 State v. Palmer,
 

 468 A.2d 985
 
 , 987-988 (Me. 1983), to support the proposition that the sentencing court cannot increase a sentence once that sentence has been imposed.
 
 Palmer,
 
 which relied on United States Supreme Court precedent, was decided a quarter century before the United States Supreme Court's opinion in
 
 Padilla v. Kentucky,
 

 559 U.S. 356
 
 ,
 
 130 S.Ct. 1473
 
 ,
 
 176 L.Ed.2d 284
 
 (2010).
 

 [¶ 58] Here, Bean is seeking a remand, post-conviction, for the trial court to make findings that could well require the trial court to reject the agreed sentencing cap and reset the case for trial, with a potentially higher sentence after trial, not bound by the plea agreement. In rejecting "opening the floodgates" arguments apparently advanced by those concerned about the adoption of new grounds to challenge guilty pleas, the
 
 Padilla
 
 Court observed that most post-conviction challenges address convictions after trial, not after plea.
 
 Padilla
 
 ,
 
 559 U.S. at 372
 
 ,
 
 130 S.Ct. 1473
 
 . Then, addressing post-conviction challenges to pleas, the Court observed:
 

 The nature of relief secured by a successful collateral challenge to a guilty plea-an opportunity to withdraw the plea and proceed to trial-imposes its own significant limiting principle: Those who collaterally attack their guilty pleas lose the benefit of the bargain obtained as a result of the plea. Thus, a different calculus informs whether it is wise to challenge a guilty plea in a habeas proceeding because, ultimately, the challenge may result in a
 
 less favorable
 
 outcome for the defendant, whereas a collateral challenge to a conviction obtained after a jury trial has no similar downside potential.
 

 Id.
 

 at 372-373
 
 ,
 
 130 S.Ct. 1473
 
 .
 

 [¶ 59] The Court's warning must be taken soberly by one invoking a post-conviction challenge to a plea, or as here, seeking to undo, post-conviction, an agreement for a plea and a sentencing cap. In essence,
 
 Padilla
 
 warns that a successful post-conviction challenge to a plea takes the case back to where it was before the plea.
 
 See
 
 id.
 

 If the plea resulted in a felony being reduced to a misdemeanor, the felony charge may be reinstated and prosecuted.
 

 If charges were dismissed in exchange for the plea, the dismissed charges may be reinstated and prosecuted. If the charge was amended to eliminate an aggravating factor or a mandatory minimum sentence requirement, those enhancements may be reinstated and prosecuted. If the plea resulted in a lighter sentence, a more severe sentence may be imposed if there is a conviction after trial. And if the case reverts to pre-plea status, bail requirements may again be imposed.
 

 [¶ 60] Thus, Bean's appeal taken here was not without considerable long-term risk if, in the short-term, he had prevailed. Because the sentencing court properly and appropriately respected the plea agreement reached by the prosecution and the defense and elected not to embarrass them by an honest articulation of the factors stated in section 1252-C, the trial court committed no error in its sentencing statement. I concur in affirming the sentence.
 

 The lack of data to support identification of the "basic" sentence that could be appropriate for these crimes may-looking at the big picture-be a positive. We are probably fortunate that prosecutions and combined sentencings for OUI convictions involving the tenth and eleventh OUIs, or the ninth and tenth OUIs, or the eighth and ninth OUIs, are few and far between, making identification of the "basic" sentence for such offenses nearly impossible to determine with any precision.
 

 One relevant precedent might be
 
 State v. Horr
 
 ,
 
 2003 ME 110
 
 ,
 
 831 A.2d 407
 
 .
 
 Horr
 
 involved only one driving event, not two separate events.
 
 Id.
 
 ¶¶ 3, 5. Horr was convicted of aggravated operating under the influence (Class C), violation of the habitual offender law (Class C), driving to endanger (Class E), and theft (Class D).
 
 Id.
 
 ¶ 1. The aggravated operating under the influence conviction was Horr's
 
 fourteenth
 
 OUI conviction.
 
 Id.
 
 ¶ 6 n.6. We affirmed the court's imposition of four consecutive maximum sentences, totaling approximately eleven and one-half years, on the four charges.
 
 Id.
 
 ¶ 5.
 

 There were no direct crime victims here, but crime victims' interests must be considered in approving or disapproving plea arrangements in many cases.
 

 Title 17-A M.R.S. § 1256(3)(B) (2017) is not materially changed from the statute referenced in
 
 State v. Commeau
 
 ,
 
 2004 ME 78
 
 ,
 
 852 A.2d 70
 
 .