2003 ME 93

**STATE of Maine**

v.

**Touch Rin SVAY.**

Supreme Judicial Court of Maine.

Argued: Feb. 13, 2003.

Decided: July 21, 2003.

Stephanie Anderson, Dist. Atty., Megan L. Elam, Deputy Dist. Atty., Julia Sheridan, Asst. Dist. Atty. (orally), Portland, for State.

Peter J. Cyr, Esq. (orally), Law Office of Anthony J. Sineni III, LLC, Beth Stickney, Esq. (orally), Immigrant Legal Advocacy Project, Portland, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

CLIFFORD, J.

[¶ 1] Touch Rin Svay appeals the sentences imposed by the Superior Court (Cumberland County, *Humphrey, J.*) following his pleas of guilty entered to charges of manslaughter (Class A), 17–A M.R.S.A. § 203(1)(A) (Supp.2002); aggravated assault (Class B), *id.* § 208(1)(B) (1983); and aggravated operating under the influence (OUI), 29–A M.R.S.A. §§ 2411(1), (6) (1996 & Supp.2002). The court sentenced Svay to six years on the manslaughter conviction, with all but eighteen months suspended, six years of probation, and imposed concurrent sentences of eighteen months each on the other convictions. Svay asserts that the trial court erred in sentencing by declining to consider as a mitigating factor the likelihood that Svay will be deported from the United States. Svay had asked the court to impose underlying sentences of less than one year on each of the charges in order to avoid deportation. Although we agree with Svay that a defendant's immigrant status and the effect that criminal convictions and criminal sentences can have on deportation are factors that a sentencing court can consider, any error in the court's statement at sentencing that it was prohibited from considering such status is harmless, and we affirm the sentence.

I. FACTS AND BACKGROUND

[¶ 2] Touch Rin Svay is not a United States citizen. He was born in 1979 in a refugee camp on the border of Cambodia and Thailand. He came to the United States when he was five years old with his mother and his younger sister, Sary, and they settled in Portland. After graduating

from Portland High School in 1998, Svay entered the United States Marine Corps.

[¶ 3] While home on leave on May 20, 2001, Svay attended a party with Sary, Sary's boyfriend, and others. The party began at one location, moved to another location, and broke up sometime between 2:30 and 3:00 A.M. Svay, who had been drinking, drove one of the vehicles leaving the party. Four of the vehicles that left the party began passing each other at high rates of speed on a road in Raymond. After passing another vehicle, Svay lost control of his vehicle; it went off the road, flipped over several times and struck a telephone pole. Sary died as a result of being ejected from Svay's vehicle after it collided with the telephone pole. She was nineteen years old and the mother of two children. Svay and Sary's boyfriend survived the crash, but they were also injured. Svay's blood-alcohol level measured .14 an hour and a half after the crash.

[¶ 4] Svay was indicted for manslaughter, aggravated assault, and aggravated OUI. After his arraignment, Svay remained free on bail. While these matters were pending, Svay was charged with criminal trespass and burglary. He was found guilty of the criminal trespass (Class D), 17–A M.R.S.A. § 402(1)(A) (Supp. 2002), but not the burglary charge. The court imposed a sentence of 364 days in the county jail. Svay was serving that sentence when he pled guilty to the manslaughter, aggravated assault, and aggravated OUI charges.

[¶ 5] In a sentencing memorandum to the court, Svay's attorney suggested a sentence of three years, with all but six months suspended and probation for a period of six years on the pending charges. At the sentencing hearing, however, Svay's attorney argued that, if Svay was sentenced to any underlying sentence of more than 364 days, he would face a high risk of deportation.[1] Svay's attorney represented that the immigration authorities would look to the underlying sentence imposed, regardless of how much of the sentence was suspended. Svay's attorney acknowledged that considering Svay's conduct, a basic sentence in the range of seven years would be appropriate. The attorney, however, urged the court to consider Svay's likely deportation as a mitigating factor in determining the maximum sentence and asked the court to impose as a maximum sentence three consecutive sentences of 364 days each.[2]

[¶ 6] The transcript of the sentencing hearing demonstrates the compassionate consideration the court gave to Svay and his family's situation. The court acknowledged the family's pain and referred to the difficulty of the case for everyone. As

---

1. An alien who is convicted of an aggravated felony "shall, upon the order of the Attorney General, be removed." 8 U.S.C.A. § 1227(a)(2)(A)(iii) (1999). An "aggravated felony" is "a crime of violence" as that term is defined in 18 U.S.C.A. § 16 (2000), and "for which the term of imprisonment [is] at least one year." 8 U.S.C.A. § 1101(a)(43)(F) (1999). A "crime of violence" is defined as:
   (a) an offense that has as an element the use, attempted use or threatened use of physical force against the person or property of another, or
   (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.
   18 U.S.C.A. § 16.

2. The State requested a sentence on the manslaughter charge of eight years with all but two years suspended and lesser but concurrent sentences on the other two charges. It recommended a basic sentence of twelve years and acknowledged that the mitigating factors outweighed the aggravating factor of his commission of a crime while on bail.

required by 17–A M.R.S.A. § 1252–C(1) (Supp.2002), the court first discussed the basic sentence. The court referred to two studies of manslaughter sentences that had been conducted, to a chart of manslaughter sentences that had been submitted by Svay's attorney, and to the specifics of several cases.[3] The court concluded that the basic sentence was ten years.

[¶ 7] The court then proceeded to the second step of the sentencing analysis, *id.* § 1252–C(2) (Supp.2002), and recited the mitigating and aggravating factors that it was taking into consideration. Among the mitigating factors listed by the court were Svay's true remorse, his lack of a criminal record except the criminal trespass conviction, a favorable prospect of rehabilitation, his youth, his taking responsibility for the offenses, his close family ties, the support of family and friends, and his service in the Marine Corps. The court also considered the aggravating factor of the criminal trespass committed while Svay was released on bail. The court noted the devastating impact of the offenses on the surviving victims, including Svay himself.

[¶ 8] In responding to Svay's request to consider his likely deportation as a mitigating factor, the court stated:

[T]he consequence of deportation is something that troubles me greatly, but as I read the law, and the law is what I must impose, it does not seem to me that it is a factor that I may consider in mitigation, and for that reason I am going to decline to do so. The reason is because I believe that if I were to do so there would be two inappropriate consequences that might follow or flow from that decision. First, if that were to be followed as a rule or a general course of law, noncitizens might never incur a felony consequence for a felony offense, and second, noncitizens by virtue of that status alone would be given favorable treatment at sentencing [that] citizens would never be able to have or enjoy. I think that is [an] inequity that I regret I cannot permit to happen in this case. I regret it because I truly hope that deportation is not a consequence to Mr. Svay.

[¶ 9] The court then stated that, in its analysis, mitigating factors outweighed aggravating factors and imposed the underlying six-year sentence, suspending all but eighteen months, with probation of six years. Concurrent eighteen-month sentences were imposed on the aggravated assault and aggravated OUI convictions.[4]

3. The chart provided by Svay listed forty-eight motor vehicle manslaughter sentences imposed for offenses committed between 1982 and 1999. The chart indicated that no underlying sentence of less than two years had been imposed in a motor vehicle manslaughter case. Most of the underlying sentences of less than five years had been imposed for crimes committed between 1982 and 1990, when motor vehicle manslaughter was either a Class C or a Class B crime. Since 1990, when the Legislature repealed motor vehicle manslaughter as a separate classification and merged it into the offense of Class A manslaughter, the chart indicated only one underlying sentence of less than five years.

The record also indicates that the court was referred to a sentencing study, performed under the direction of two justices of this Court, which included seventeen motor vehicle manslaughter cases. That study indicated that the highest underlying sentence was eighteen years, the lowest underlying sentence was eight years and the average underlying sentence was eleven years for 1997 manslaughter cases. Another study of motor vehicle manslaughter sentences between October 1989 and April 1991, indicated an average underlying sentence of seven years, although most of the sentences in that study may have been for crimes committed while motor vehicle manslaughter was a Class B crime.

4. The court also imposed the mandatory minimum fine of $2000 on the aggravated OUI conviction, 29–A M.R.S.A. § 2411(5)(D)(1) (Supp.2002), and suspended Svay's right to

The court also made these sentences concurrent with the 364-day sentence that Svay was then serving for the criminal trespass conviction. The result of the sentencing was that, for these three charges, Svay was required to serve only six months additional time beyond the time he was already serving for the criminal trespass.

[¶ 10] Pursuant to 15 M.R.S.A. § 2152 (2003) and M.R.App. P. 20, we granted Svay leave to appeal his sentence.

## II. DISCUSSION

[¶ 11] Svay does not challenge the court's establishment of the basic sentence (ten years), the first step in the sentencing analysis. His challenge is directed at the second step, that is, the consideration of the aggravating and mitigating factors that may increase or decrease the basic sentence. We review a court's application of aggravating and mitigating factors for abuse of discretion. *State v. Ardolino*, 1997 ME 141, ¶ 26, 697 A.2d 73, 81. An abuse of discretion occurs when a court fails to consider a factor because of a mistaken belief that it is prohibited by law from considering that factor. *See West Point–Pepperell, Inc. v. State Tax Assessor*, 1997 ME 58, ¶ 7, 691 A.2d 1211, 1213. An error of law that leads a court not to consider a factor that it can legally consider causes the court to fail to fully exercise its discretion.

[¶ 12] The general purposes of sentencing are many: they include crime prevention through deterrence, rehabilitation and restraint of offenders, 17–A M.R.S.A. § 1151(1) (1983); minimizing correctional experiences, *id.* § 1151(3); giving warning of sentences that may be imposed, *id.* § 1151(4); eliminating sentencing inequalities unrelated to "legitimate criminological

goals," *id.* § 1151(5); encouraging differentiation "among offenders with a view to a just individualization of sentences," *id.* § 1151(6); and "permitting sentences that do not diminish the gravity of offenses," *id.* § 1151(8) (Supp.2002).

[¶ 13] The consequence of deportation may be considered by a sentencing court because, among other reasons, the impact that a particular sentence will have on the offender is relevant to the offender's likelihood of rehabilitation. *See State v. Roberts*, 641 A.2d 177, 179 (Me.1994). Deportation is relevant to creating an appropriate individualized sentence. *See* 17–A M.R.S.A. § 1151(6). Deportation may also be a relevant factor in assessing the impact of the offense on the victim, *id.* § 1252–C(2), where as here, victims include the decedent's mother, who faces not only the loss of her daughter from Svay's actions, but the loss of her son as well. Depending upon the particular case, deportation may be a mitigating factor or an aggravating factor. *Cf. State v. DeWalt*, 684 A.2d 1291, 1293 (Me.1996) (stating that defendant's mental illness could serve as a mitigating or aggravating factor). Consideration of deportation is similar to consideration of a defendant's mental or physical illness, physical handicap, age, or other factors that may impact the length of incarceration.

[¶ 14] Although the defendant's status as an immigrant and the fact that he could be deported as a result of having an underlying sentence of one year or greater imposed on him, *are* legitimate factors to be considered in sentencing, and statements made by the trial court in the sentencing transcript can be construed as reflecting a belief that the court was prohibited from considering such facts, the circumstances of this case would preclude

operate a motor vehicle for six years, *id.* § 2411(6).

any realistic expectation that the maximum period of imprisonment would be anywhere near the range of 364 days.

[¶ 15] Information presented to the court at sentencing listed forty-eight motor vehicle manslaughter sentences imposed for offenses committed between 1982 and 1999. This study indicated that no underlying sentence of less than two years had been imposed in a motor vehicle manslaughter case. Most of the underlying sentences of less than five years had been imposed for crimes committed between 1982 and 1990, when motor vehicle manslaughter was either a Class C or a Class B crime. Since 1990, when the Legislature repealed motor vehicle manslaughter as a separate classification and merged it with the offense of Class A manslaughter, the study indicated only one underlying sentence of less than five years.

[¶ 16] The sentencing study of seventeen manslaughter cases, to which the court was referred, revealed that the highest underlying sentence was eighteen years, the lowest underlying sentence was eight years, and the average underlying sentence was eleven years for 1997 manslaughter cases. Another study of motor vehicle manslaughter sentences between October 1989 and April 1991, indicated an average underlying sentence of seven years, although most of the sentences in that study may have been for crimes committed while motor vehicle manslaughter was classified as a Class B crime. Considering the sentences for similar crimes that were presented to the trial court, as well as all other relevant factors considered by the court, it is highly probable that the sentence would not be different if the court had acknowledged that it could treat deportation as a permissible factor.

[¶ 17] Accordingly, any suggestion by the court that it could not consider Svay's deportation status in mitigation of sentence is of no practical consequence in the circumstances of this case, and does not require us to vacate an otherwise appropriate sentence.

The entry is:

Judgment affirmed