MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2018 ME 58
Docket:        SRP-17-22
Argued:        October 11, 2017
Decided:       April 26, 2018

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.
Majority:      SAUFLEY, C.J., and MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.
Concurrence:   ALEXANDER, J.

STATE OF MAINE

v.

ANDREW B. BEAN

SAUFLEY, C.J.

[¶1] Andrew B. Bean applied for leave to appeal from a sentence entered in the Unified Criminal Docket (Oxford County, *Clifford, J.*) following his guilty plea, entered upon an agreement that his sentence would not exceed an agreed upon "cap." The Sentence Review Panel granted his application for sentence review. Bean contends that, notwithstanding the cap agreement with the State, through which he pleaded guilty to two counts of aggravated criminal operating under the influence (Class B), 29-A M.R.S. § 2411(1-A)(D)(2) (2017), and possession of a firearm by a prohibited person (Class C), 15 M.R.S. § 393(1)(A-1) (2017), the sentencing court was required to explain its selection of the basic, maximum, and final periods of incarceration. *See* 17-A M.R.S.

2

§ 1252-C (2017); M.R.U. Crim. P. 32(a)(3).  The State argues that any error in the court's articulation of the sentence was harmless.  We agree that the error was harmless, and we affirm the sentence.

## I.  BACKGROUND

[¶2]  When Bean appeared in court on November 29, 2016, he pleaded guilty to what would become his tenth and eleventh convictions for operating under the influence.  He entered those guilty pleas with the advice of counsel and pursuant to an agreement that the State would dismiss certain other charges against him and would recommend concurrent sentences of ten years in prison, with all but five years suspended and three years of probation, for the aggravated OUI convictions.  If the court rejected the State's recommendation as too low, Bean would be allowed to withdraw his pleas.  *See* M.R.U. Crim. P. 11A(d)-(e).  With the State's agreement, Bean also reserved the right to argue that the court should exercise its discretion to sentence him to less time in prison.[1]  The court declined Bean's request for a lower sentence and accepted

---

[1]  It was asserted at oral argument that Bean's right to argue for a more favorable sentence was not part of the plea agreement but was instead the result of an impromptu and informal request made immediately prior to the Rule 11 hearing.  However, because Bean in fact argued for a more favorable sentence than that recommended by the State, and the State did not object, we assume for purposes of this appeal that this was a term of the plea agreement entered into between Bean and the State.  We note, however, that M.R.U. Crim. P. 11A(b) requires the disclosure of a plea agreement in open court in order to allow for adequate appellate review.  An essential term of a plea agreement—such

the recommendation of the State. Arguing that the court did not sufficiently articulate its reasons for accepting the State's recommendation, and that the court failed to separately state basic, maximum, and suspended portions of each sentence pursuant to 17-A M.R.S. § 1252-C, Bean seeks a remand for a new sentencing.

[¶3]  The details are these, taken from the record and the transcript of the sentencing. On November 21, 2015, Maine game wardens arrested Bean after he drove his truck to a hunting camp where the game wardens were present to monitor a dispute. Bean was "very obviously intoxicated." The wardens conducted a series of field sobriety tests, which Bean failed. Bean then submitted to a blood alcohol test using an Intoxilyzer, and he registered a 0.21 blood alcohol content. Beside him in the passenger compartment of his truck was a rifle, which Bean was prohibited from possessing because of his criminal history.

[¶4]  Very shortly thereafter, on December 17, 2015, Bean was charged by indictment with possession of a firearm by a prohibited person (Class C), 15 M.R.S. § 393(1)(A-1), criminal OUI (Class C), 29-A M.R.S. § 2411(1-A)(B)(2),

_____

as the right to argue for a more favorable sentence, which preserves the right to seek discretionary review—should be disclosed and recorded.

4

and fraudulently obtaining a license or permit (Class E), 12 M.R.S. § 10757 (2017).

[¶5] On December 20, 2015—three days after his indictment for the first arrest and only one month after that arrest—Bean was arrested again. This time, a Paris police officer observed Bean driving well under the speed limit and weaving back and forth over the road. When the police officer pulled him over, Bean stated, "I'm caught, I confess, I'm drunk, just take me to jail." He submitted to an Intoxilyzer test and registered a 0.29 blood alcohol content. Bean was later charged by indictment with criminal OUI (Class C), 29-A M.R.S. § 2411(1-A)(B)(2), attaching false plates (Class E), 29-A M.R.S. § 2104(1) (2017), and violating a condition of release (Class E), 15 M.R.S. § 1092(1)(A) (2017).

[¶6] A year after the first of the two stops, on November 29, 2016, Bean entered his pleas of guilty. He was represented by counsel. The court held a Rule 11 hearing on both indictments to determine whether to accept the plea agreement that Bean had reached with the State. *See* M.R.U. Crim. P. 11. Pursuant to the agreement between Bean and the State, the State would dismiss the charges of fraudulently obtaining a license or permit, attaching false plates, and violating a condition of release. It would also dismiss the two charges of

Class C criminal OUI and charge Bean by information with two counts of aggravated OUI (Class B), 29-A M.R.S. § 2411(1-A)(D)(2). Thus, conditioned upon the court's acceptance of the agreement, Bean entered a plea of guilty to two counts of aggravated OUI (Class B) and one count of possession of a firearm by a prohibited person (Class C). Bean waived all rights related to trial, including his right to appeal from the convictions. After accepting Bean's guilty pleas, the court proceeded immediately to the sentencing hearing.

[¶7] The State made the following recommendation to the court:

THE COURT: [I]s the State recommending a cap on this case?

THE STATE: Yes we are, Your Honor. On the two OUI counts, we are recommending sentences of ten years, all suspended but five years; there are minimum fines of I believe $2,100 each, as well as a six-year license suspension.

As a rationale for this recommendation, the State pointed to Bean's high blood alcohol content and the proximity in time between the two arrests. The State also emphasized Bean's extensive history of operating under the influence, including his nine prior convictions for operating under the influence and five convictions for operating after suspension. The State contended that a more lenient sentence would fail to meet the statutory sentencing objective of restraining convicted persons in the interest of public safety. *See* 17-A M.R.S. § 1151(1) (2017).

6

[¶8]   Bean's counsel then argued for a sentence of five years of imprisonment, with all but twenty-one months suspended, and two years of probation.  In so doing, he emphasized Bean's cooperation with the arresting officers and the fact that Bean had not harmed anyone in either incident.

[¶9]   The court accepted the State's recommendation regarding the sentences for the OUI convictions and declined to accept Bean's request for the more favorable sentence.  It sentenced Bean to ten years' imprisonment, all but five years suspended, with three years of probation for each count of aggravated OUI, to be served concurrently with one another.  In addition, the court sentenced Bean to twenty-one months' imprisonment for the possession of a firearm by a prohibited person, also to be served concurrently with the other sentences.[2]

[¶10]  In announcing the sentence, the court expressly acknowledged the legislatively established goals of sentencing, noting that "the prevention of crime through the deterrent effect of sentences, the rehabilitation of convicted persons, and the restraint of convicted persons when required in the interest

---

[2]  In imposing the firearms sentence, the court rejected a recommendation by the State for a five-year term of imprisonment.  All of the sentences were to be served concurrently with a sentence of twenty-one months' imprisonment for a federal conviction arising from the November 21, 2015, incident.

of public safety, all apply to this case." *See* 17-A M.R.S. § 1151 (2017). The court also stated, "To minimize correctional sentence experiences which serve to promote further criminality also applies to every . . . substantial sentence that we're talking about. And to give fair warning of the nature of the sentences that may be imposed on the conviction of a crime, to encourage differentiation among defendants with a view to [a just] individual sentence." *See id*. The court did not specifically articulate a basic and maximum period of incarceration, s*ee* 17-A M.R.S. § 1252-C; nor did the court describe its rationale for suspending a portion of the sentences.

[¶11] Bean timely applied for leave to appeal from his sentence, and the Sentence Review Panel granted the application. *See* M.R. App. P. 20(b) (Tower 2016);[3] 15 M.R.S. § 2152 (2017).

## II. DISCUSSION

[¶12] Bean contends that the sentencing court erred by failing to conduct the sentencing procedure that the Legislature has codified at 17-A M.R.S. § 1252-C, which was enacted following our decision in *State v. Hewey*, 622 A.2d

---

[3] The Maine Rules of Appellate Procedure were restyled effective for appeals filed on or after September 1, 2017. *See* M.R. App. P. 1. Because Bean filed his application for leave to appeal from his sentence before September 1, 2017, the restyled Maine Rules of Appellate Procedure do not apply.

8

1151, 1154-55 (Me. 1993). The State argues that any error in the court's sentencing procedure was harmless. We address each of these arguments in turn below. We also discuss the availability of a discretionary appeal where, as here, a defendant enters a plea pursuant to an agreement that the State will recommend a particular sentence as a "cap," and the court imposes a sentence that does not exceed the sentence recommended by the State.

A.    Plea Terminology and Availability of Review

[¶13]  The availability of a sentence appeal differs depending on the context of the sentencing. Because there are several types of potential plea circumstances and agreements, because the parties may each interpret a discussion or agreement differently, and because the language used to describe the context and any agreement will be critical to determining the availability of an appeal from the sentence, we begin by summarizing the availability of sentencing appeals in each of the various circumstances in which a defendant enters a plea of guilty.[4]

---

[4] We refer to guilty pleas throughout this opinion, but we recognize that the defendant's plea may be entered as a nolo contendere plea or an "Alford" guilty plea if the court accepts that plea. *See* M.R.U. Crim. P. 11(a); *see also North Carolina v. Alford*, 400 U.S. 25, 37 (1970); *Oken v. State*, 1998 ME 196, ¶ 2 n.1, 716 A.2d 1007.

1.    Open Plea

[¶14]  When a defendant enters a plea of guilty without any agreement or arrangement with the State as to the sentence that the court will be asked to impose, we refer to that as an "open" plea.  *See State v. Stevens*, 2017 ME 30, ¶ 2 n.1, 156 A.3d 131.  Both the State and the defendant are free to present arguments on any aspect of the sentence that could be imposed.  In an open plea, the parties may argue for, and the court may enter, any sentence authorized by law.  The court's authority to exercise its full discretion within the law is identical to its sentencing authority following a verdict of guilty after a trial.

[¶15]  Once the defendant has pleaded guilty in an open plea, following a colloquy between the defendant and the court to assure that the defendant understands the many rights that are waived by entering the plea, *see* M.R.U. Crim. P. 11, the court may, within the limits of the law, impose whatever sentence it determines to be justified and supported by the facts of the case. When the plea is an open plea, the defendant does not retain the right to

10

withdraw the guilty plea after sentencing in the event that he disagrees with the final sentence.[5]

[¶16]  Unless there has been a waiver of appeal, a defendant who enters an open plea does retain the right to file an application for review of any sentence longer than a year.  *See* 15 M.R.S. § 2151 (2017).  The Sentence Review Panel of the Supreme Judicial Court then has the discretion to decide whether to grant that application and allow an appeal to proceed.  *See id.* § 2152.  The defendant also has the right to file a direct appeal of the sentence when the constitutionality or legality of the sentence can legitimately be challenged.[6]  *See State v. Hoover*, 2017 ME 158, ¶¶ 18, 40, 169 A.3d 904.

[¶17]  As with a sentence imposed by the court following a trial, the sentencing judge's full analysis of the factors outlined in section 1252-C is at its most critical in the context of an open plea.  *See State v. Prewara*, 687 A.2d 951,

---

[5]  Nor is the defendant's right to withdraw his plea *prior* to the imposition of sentence absolute. Instead, the sentencing court has discretion regarding whether to permit the defendant to do so, and must consider "[t]he length of time between entering the plea and seeking to withdraw it; [t]he potential prejudice to the State; [t]he defendant's assertions of innocence; and [a]ny deficiency in the proceeding at which the defendant entered the plea in accordance with M.R. Crim. P. 11." *State v. Hillman*, 2000 ME 71, ¶ 8, 749 A.2d 758.

[6]  When a direct appeal of a sentence is filed without an indication of a legitimate basis for a claim of illegality, including a constitutional violation, we may issue a show cause order requiring the defendant to demonstrate why the direct appeal has a legitimate basis and should not be dismissed.

955 (Me. 1996) (emphasizing the need for a full analysis in the context of an open plea).

2.    Plea Upon Joint Recommendation

[¶18]  At the other end of the spectrum of possible plea agreements is a fully agreed upon plea, which we refer to as a plea upon joint recommendation. *See* M.R.U. Crim. P. 11A(a)(4).[7]  In the context of a joint recommendation plea, the defendant enters a plea of guilty, again following a thorough colloquy with the court to assure that the defendant understands the rights that he is forever waiving.  *See* M.R.U. Crim. P. 11(b)-(c).  A plea entered upon the joint recommendation of the parties will become operative only if the court accepts the joint recommendation or imposes a sentence that is more favorable to the defendant.  *See* M.R.U. Crim. P. 11A(d)-(e).  If the court decides that it would impose a sentence that is *less* favorable to the defendant than what the parties

---

[7]  The same procedures and limitations are applicable when the state elects, pursuant to M.R.U. Crim. P. 11A(a)(2), not to oppose the recommendation of the defendant rather than explicitly agreeing to the joint recommendation.

have jointly recommended, the defendant must be allowed to withdraw his guilty plea, and all of his rights, including the right to trial, remain intact. *See id.*

[¶19] Before the court determines whether it will accept and impose the jointly recommended sentence, it will hear from the State and the defendant, and in certain circumstances, the victim, regarding the facts of the case. *See* M.R.U. Crim. P. 11(b), (e). The court will then undertake an analysis to assure that the sentence meets the statutory framework and sentencing goals. In many instances, the court's analysis will not be extensive because both the State and the defendant have agreed that the proposed sentence is appropriate. However, the court must assure itself and the public, among other things, that the sentence is legal, that the proposal falls within the range of the court's discretion, and that the sentence meets the sentencing goals established by the Legislature.

[¶20] In contrast to the defendant's appellate options following an open plea, the defendant *does not* have the right to file an application for discretionary review of an agreed-upon sentence when the court accepts the recommendation. *See* 15 M.R.S. § 2151(2) (excluding from our discretionary review sentences imposed as a result of the court accepting a plea with an agreed-upon sentence pursuant to M.R.U. Crim. P. 11A(a)(2) and (4)). A

defendant's application for review of a sentence entered upon joint recommendation will therefore be dismissed.

[¶21] In addition, when the joint recommendation is fully accepted by the court, the defendant will be deemed to have waived any claim of constitutional disproportionality or cruel and unusual punishment. *Cf. State v. Chavarria*, 208 P.3d 896, 900-01 (N.M. 2009) (holding that a defendant who pleads guilty and understands the maximum potential sentence waives his right to appeal on grounds of cruel and unusual punishment). Moreover, any later discovered illegality in the sentence should be addressed through a motion to correct the sentence pursuant to M.R.U. Crim. P. 35.[8] Thus, although there may be instances in which a direct appeal may be taken to address an illegality following a plea upon joint recommendation, those instances will be rare, and a direct appeal that does not clearly assert such an illegality will be dismissed.

---

[8] A defendant who has not waived his right to do so may also appeal directly from a *conviction* entered upon a guilty plea pursuant to a joint recommendation by challenging the constitutionality of the statute defining the offense for which he was convicted. *See Class v. United States*, 583 U.S. ---, 138 S. Ct. 798, 803 (2018).

14

### 3. Cap Plea

[¶22] In some circumstances, as in this case, the State and the defendant may agree that the defendant will enter a guilty plea and the State will recommend a particular sentence, but the State agrees that the defendant may reserve the right to argue for a more favorable sentence. *See, e.g., State v. Cook*, 2011 ME 94, ¶ 14, 26 A.3d 834. This is often referred to as a "cap plea" because the State's recommendation becomes the harshest sentence—the cap—that the court can impose while accepting the plea agreement. *See* M.R.U. Crim. P. 11A(d).

[¶23] When the sentence falls within those that are subject to an application for discretionary appellate review, *see* 15 M.R.S. § 2151, and when the defendant has not explicitly waived the right to file such an application, the defendant may file an application for leave to appeal that part of the sentence for which the defendant reserved the right to argue to the sentencing court.[9]

[¶24] A defendant may explicitly waive his right to appeal the sentence pursuant to a plea agreement that also allows him to argue for a sentence more favorable than the State's recommendation. To accomplish such a waiver,

---

[9]  An appeal from the imposition of restitution will be limited by 15 M.R.S. § 2151(3) and 17-A M.R.S. §1330-A (2017).

however, the defendant must clearly and unambiguously state an intent to waive the right to appeal, and the waiver must be made on the record at the Rule 11 hearing.

[¶25] As with other types of pleas, the defendant in a cap plea may file a direct appeal of a sentence if there is a legitimate claim of illegality, including any constitutional violation. As always, however, a direct appeal that does not support a claim of actual illegality will be dismissed. *See State v. Ricker*, 2001 ME 76, ¶ 18, 770 A.2d 1021.

B.    Bean's Appeal

[¶26] The sentence imposed on Bean followed a cap plea. At the sentencing, Bean agreed to plead guilty, knowing what sentence the State would recommend, and knowing that he would not have the right to withdraw the plea if the court accepted the State's recommendation. He did, however, reserve the right to argue for a shorter underlying sentence, for a shorter unsuspended portion of the sentence, and for a shorter term of probation.

[¶27] Bean did not explicitly waive his right to apply for a discretionary review of the sentence imposed. Accordingly, as explained above, on this cap plea Bean retained the right to apply for leave to appeal the sentence through the discretionary sentence review process set forth in 15 M.R.S. § 2151. Bean

did apply for leave to appeal, the Sentence Review Panel granted his application, and we now proceed to review the propriety of his sentence.

[¶28] To analyze the propriety of Bean's sentence, we review the court's analysis of the multiple steps required in sentencing. *See* 17-A M.R.S. § 1252-C. In so doing, we look to the trial court's articulation of the basic sentence, the identification and weighing of the aggravating and mitigating factors in order to determine the maximum sentence, and the factors it considered to determine whether any part of the sentence will be suspended.[10] *See id*.

[¶29] Although the court did quite clearly address the *goals* of sentencing, *see* 17-A M.R.S. § 1151, it did not undertake a section 1252-C analysis on the record. No exception to the section 1252-C requirements is set forth in the statute regarding a cap plea. *See id*. The statute requires at least a basic 1252-C analysis, and because of the potential for appellate review, that basic analysis should have been provided to the parties and the public to explain the court's decision to accept the cap proposed by the State. *See* M.R.U. Crim. P. 32(a)(3). Because the court in this instance did not articulate the

---

[10] Ordinarily, we review the basic sentence established by a court for misapplication of principle and the maximum and final sentence for abuse of discretion. *State v. Reese*, 2010 ME 30, ¶¶ 22-23, 991 A.2d 806. Here, the issue is one of compliance with 17-A M.R.S. § 1252-C generally, and we therefore apply a de novo review. *State v. Harrell*, 2012 ME 82, ¶ 4, 45 A.3d 732.

section 1252-C elements of the sentence or explain a rationale for the ultimate sentence imposed, the court erred.

C.    Harmless Error

[¶30]  As have many other courts, we have held that errors in sentencing are subject to a harmless error analysis.  *See, e.g., State v. Svay*, 2003 ME 93, ¶¶ 16-17, 828 A.2d 790; *Williams v. United States*, 503 U.S. 193, 202-03 (1992). In conducting any harmless error analysis, we are guided by Maine Rule of Unified Criminal Procedure 52(a), which states, "Any error, defect, irregularity, or variance that does not affect substantial rights shall be disregarded."

[¶31]  Generally, "harmful error is error that [is] sufficiently prejudicial to have affected the outcome of the proceeding."  *State v. Pillsbury*, 2017 ME 92, ¶ 18, 161 A.3d 690 (quotation marks omitted).  In the context of an error in the application of sentencing procedures, a defendant's substantial rights are not compromised if we determine, by a review of the entire record, that even if proper procedures had been followed, it is highly probable that the sentence would not be different.  *See Svay*, 2003 ME 93, ¶ 16, 828 A.2d 790.

[¶32]  In *State v. Cobb*, we applied a harmless error analysis where the sentencing court had improperly considered unproven aggravating factors in setting the maximum term of imprisonment.  2006 ME 43, ¶ 24, 895 A.2d 972.

We held that although it was error for the sentencing court to consider those aggravating factors, the error did not affect the defendant's substantial rights because it was "clear that the court would have concluded that Cobb's criminal history, combined with the nature and seriousness of the crime, warranted setting the maximum sentence in the upper tier, even without the [improper] evidence." *Id.*

[¶33] Here, Bean pleaded guilty to two counts of Class B aggravated OUI, each of which, standing alone, carried the potential for a maximum sentence of ten years. *See* 17-A M.R.S. § 1252(2)(B) (2017). The record before the sentencing court established that Bean had a blood alcohol content of 0.21 upon his first arrest and 0.29 upon his second arrest, and that the second arrest occurred within weeks of the first. His high blood alcohol content in each incident would have justified a correspondingly severe basic period of incarceration.[11] *See State v. Seamon*, 2017 ME 123, ¶ 12 n.2, 165 A.3d 342 (explaining that the "particular nature and seriousness" of the specific offense

---

[11] Bean contends that the sentencing court "likely" imposed a basic term of imprisonment "at or near the statutory maximum," intended for particularly egregious crimes. *State v. Stanislaw*, 2011 ME 67, ¶ 13, 21 A.3d 91. However, the ultimately imposed underlying ten-year sentence is likely a result of a combination of a higher than minimum basic sentence and the court's consideration of the extraordinary aggravating factors properly considered in calculating the maximum period of incarceration—the number of prior convictions and the proximity in time between his arrests.

for which a defendant is charged is the proper focus in setting the basic sentence). With respect to a maximum sentence, Bean's *nine* prior convictions for OUI and *five* convictions for operating after revocation were aggravating factors that would have warranted a ten-year term of imprisonment as the maximum sentence for either or both of the OUI convictions. *See* 15 M.R.S. § 1252(2)(B). Finally, given that the court was issuing a sentence for convictions "arising from different criminal episodes," and that Bean had been released on bail when he was arrested for the second offense, the court was authorized, within its discretion, to impose consecutive rather than concurrent sentences. *See* 17-A M.R.S. § 1256(2)(A), (C) (2017); *State v. Downs*, 2009 ME 3, ¶ 30, 962 A.2d 950.

[¶34] Ultimately, for his tenth and eleventh OUI convictions, arising from incidents that occurred within weeks of each other, Bean received an unsuspended sentence of five years, with an underlying sentence of ten years. Although he could legally have received consecutive unsuspended terms that totaled twenty years, pursuant to the State's recommended sentence cap, he did not. The sentencing court made it clear in imposing the sentence that "the restraint of convicted persons when required in the interest of public safety" was very much a part of the court's analysis. On this record, there can be little

question that public safety demanded a substantial sentence. The court would have acted well within its discretion to have rejected the plea agreement entirely as insufficiently protective of public safety. On a review of the entire record, the absence of a section 1252-C analysis was not sufficiently prejudicial to affect the outcome of the proceeding and did not affect Bean's substantial rights.

The entry is:

Sentence affirmed.

———————————

ALEXANDER, J, concurring.

[¶35] I concur with the Court that the sentences imposed on Andrew Bean for what were his tenth and eleventh operating under the influence convictions and a related conviction for possession of a firearm by a felon must be affirmed. *See* Court's Opinion ¶ 34. I do not concur with the Court's conclusion that, although there was no request for findings, the sentencing court erred when it did not reference the standards set in 17-A M.R.S. § 1252-C (2017) in articulating its rationale for imposing the State's recommended sentence. *See* Court's Opinion ¶¶ 28-29. That sentence had been negotiated

with Bean, as a sentencing cap, as part of Bean's agreement to plead to the charges at issue.

## I. RELEVANT CASE HISTORY

[¶36]  Before the events which gave rise to the charges leading to the sentences at issue on this appeal, Bean had a serious criminal record.  That record included at least *nine* prior operating under the influence convictions, most of which were felonies.  His prior record caused Bean to be designated a felon prohibited from possessing firearms by operation of 15 M.R.S. § 393(1)(A-1) (2017).

[¶37]  On November 21, 2015, Bean, "very obviously intoxicated," was arrested for operating a motor vehicle while under the influence of intoxicants. 29-A M.R.S. § 2411(1-A) (2017).  His Intoxilyzer test registered a 0.21 blood alcohol content.  Because Bean had a firearm beside him in his vehicle, he was also charged with possession of a firearm by a prohibited person (Class C), 15 M.R.S. § 393(1)(A-1).

[¶38]  One month later, on December 20, 2015—three days after his indictment for the charges arising from the first arrest—Bean was again arrested for operating under the influence. When stopped, Bean confessed "I'm

drunk, just take me to jail." This time his Intoxilyzer test registered a 0.29 blood alcohol content.

[¶39] In November 2016, Bean reached an agreement with the prosecutor to plead guilty to two counts of aggravated operating under the influence (Class B), 29-A M.R.S. § 2411(1-A)(D)(2), and one count of possession of a firearm by a prohibited person (Class C), 15 M.R.S. § 393(1)(A-1). As part of the plea negotiations, the prosecutor agreed to recommend a sentencing cap of ten years, all but five years suspended, legislatively mandated minimum fines, and a six-year suspension of his right to operate. Bean was free to argue for a lesser sentence on the two Class B aggravated operating under the influence charges.

[¶40] After a sentencing hearing at which Bean argued for a lesser sentence, the court imposed a sentence on the two Class B aggravated operating under the influence charges of ten years' imprisonment with all but five years suspended and three years' probation, the sentences to be served concurrently. The court also imposed a concurrent sentence of twenty-one months on the Class C possession of a firearm by a prohibited person charge. The sentence ultimately imposed was consistent with the cap recommended by the State and negotiated as part of the plea arrangement.

## II.  APPLICATION OF SECTION 1252-C SENTENCING FACTORS

[¶41]  The Court's opinion accurately identifies several factors properly addressed by the sentencing court in articulating the reasons for its sentence. Court's Opinion ¶ 10.  But the Court faults the sentencing court, holding that the court committed error, because it did not articulate what it believed to be the "basic" sentence for Bean's crimes, what it believed to be the "maximum" sentence for Bean's crimes after considering aggravating and mitigating factors, and then apply those factors to determine how much, if any, of the sentence would be suspended and how much probation Bean would receive—the sentencing factors listed in 17-A M.R.S. § 1252-C(1)-(3).  *See* Court's Opinion ¶¶ 28-29.

[¶42]  Subsection (1) of section 1252-C directs that in sentencing "[t]he court shall first determine a basic term of imprisonment by considering the particular nature and seriousness of the offense as committed by the offender." Unfortunately, here, and in most cases involving serious and somewhat unique crimes, there is no body of data to aid in identifying the "basic" term of imprisonment.[12]  The crimes and the circumstances at issue were unique—

---

[12]  The lack of data to support identification of the "basic" sentence that could be appropriate for these crimes may—looking at the big picture—be a positive.  We are probably fortunate that prosecutions and combined sentencings for OUI convictions involving the tenth and eleventh OUIs,

tenth and eleventh convictions for felony OUIs, Class B crimes, with an available maximum sentence for each of ten years. Because those crimes constituted separate and serious criminal actions, the court had the capacity to make those sentences consecutive, totaling twenty years. *See* 17-A M.R.S. § 1256(2)(A), (D) (2017) (addressing consecutive sentencing).

[¶43] No precedent of this Court, no reports, no body of data are available to provide the sentencing court or counsel any idea as to what the "basic" sentence for tenth and eleventh felony OUI convictions, for offenses committed a month apart, should be.[13] All the sentencing judge would have, all any sentencing judge would have, would be that judge's knowledge and experience with regard to similar situations—two felony OUIs committed within a short time period and presented to the court, together, for sentencing.

---

or the ninth and tenth OUIs, or the eighth and ninth OUIs, are few and far between, making identification of the "basic" sentence for such offenses nearly impossible to determine with any precision.

[13] One relevant precedent might be *State v. Horr*, 2003 ME 110, 831 A.2d 407. *Horr* involved only one driving event, not two separate events. *Id.* ¶¶ 3, 5. Horr was convicted of aggravated operating under the influence (Class C), violation of the habitual offender law (Class C), driving to endanger (Class E), and theft (Class D). *Id.* ¶ 1. The aggravated operating under the influence conviction was Horr's *fourteenth* OUI conviction. *Id.* ¶ 6 n.6. We affirmed the court's imposition of four consecutive maximum sentences, totaling approximately eleven and one-half years, on the four charges. *Id.* ¶ 5.

[¶44]   While sentencing for tenth and eleventh felony OUI convictions appears virtually unprecedented, most judges would have had some experience with sentencing for two felony OUIs, usually Class C felonies, committed, as in this case, fairly close together in time.  At the time of sentencings involving the sixth and seventh, or seventh and eighth OUI convictions, being sentenced together, experience indicates that common practice in such sentencings is to impose "consecutive maxes"—that is, two five-year terms of incarceration imposed consecutively with no part of the sentence suspended.  *See State v. Horr*, 2003 ME 110, ¶¶ 1-5, 831 A.2d 407 (affirming imposition of "consecutive maxes" for Class C OUI and habitual offender violations, plus two lesser offenses in a case involving a single driving event by an individual with a very serious prior criminal record).

[¶45]   "Consecutive maxes" are supported by experience that repeat offenders, at this level, have demonstrated that, for them, rehabilitation efforts and driving prohibitions, enforced through probation, are a useless exercise. Removal from society, for as long as possible, has become the only alternative available to protect the public.

[¶46]   The resulting ten-year sentence of incarceration arising from experience-based practice in multiple repeat offender OUI sentencing would

have been double the five years of incarceration sentence recommended by the State, as the cap, in this case. Accordingly, had the sentencing judge properly considered and articulated the "basic" sentence for these crimes, based on the limited information and experience available, the court may have been required to reject the plea agreement with the five-year cap as too lenient. *See* M.R.U. Crim. P. 11A(d)-(e). Instead, respecting and deferring to the prosecutor's and defense counsel's experience and understanding of the case, the court appropriately went along with the plea arrangement and accepted the recommended cap.

[¶47] Beyond the difficulty of articulating the "basic" sentence and in so doing perhaps embarrassing the prosecutor and defense counsel, there is another difficulty with applying the section 1252-C standards here. Subsection (2) of section 1252-C requires that after the "basic" sentence is identified, a sentencing court must then "determine the maximum period of imprisonment to be imposed by considering all other relevant sentencing factors, both aggravating and mitigating, appropriate to that case." Those standards require articulation of a "maximum" sentence that the court would set after considering aggravating and mitigating factors.

[¶48]  Like the "basic" sentence, the court could not have properly articulated the maximum sentence it might set because, here, that "maximum" sentence was established by the sentencing cap.  That "maximum" sentence set by the cap (ten years total, five years of incarceration) was only one-quarter of the sentence of incarceration that could have been imposed had the maximum sentences on each of the Class B OUIs been imposed and had the sentences been made consecutive.

[¶49]  Thus, the court could not have forthrightly applied two of the three criteria articulated in section 1252-C.  Because of the unique nature of the crimes—tenth and eleventh OUI offenses—in all likelihood the court would have imposed a much higher sentence, had it been considering sentencing as part of an open plea or post-trial, after conviction, without the restriction of the cap.

[¶50]  The Court holds that the sentencing court erred in failing to articulate the court's view of the "basic" sentence and the "maximum" sentence.  Court's Opinion ¶¶ 28-29.  That holding, in essence, requires judges, faced with pleas to serious felonies with a cap sentencing recommendation, to sometimes embarrass the parties by criticizing a recommendation as too low and reject the plea agreement.  The sentencing judge here did not do that, recognizing that a

sentencing agreement may be important for the prosecution, the defense, and crime victims[14] who want to resolve the case, sometimes for reasons not apparent to the court, and avoid the tensions, rigors and uncertainty of a trial.

[¶51] We have faced similar situations of inadequate articulation of statutory factors, including section 1252-C factors, in sentencing, but without holding that the sentencing court erred. In *State v. Barnard*, 2003 ME 79, ¶ 25, 828 A.2d 216, the defense, on a sentence review appeal, asserted that the sentencing court had considered the sentencing factors in the wrong order in its sentencing discussion. Without addressing the alleged misstatements in sentencing, we found no error, holding that "the resulting sentence, slightly above the mandatory minimum, demonstrates no misapplication of principle." *Id*. The sentencing court's action here, stating its reasoning for its sentence and imposing a sentence that was only one-quarter of the prison term that might have been imposed, was not error and deserves similar treatment.

[¶52] In another analogous case, when a sentencing court did not make a statutorily required finding regarding a sentencing factor, and, as here, counsel did not request that the court address the required finding, we

---

[14] There were no direct crime victims here, but crime victims' interests must be considered in approving or disapproving plea arrangements in many cases.

affirmed, holding that the sentencing court committed no error. *State v. Commeau*, 2004 ME 78, ¶¶ 18-24, 852 A.2d 70. In *Commeau*, the trial court imposed consecutive sentences on two crimes totaling fifty years. *Id.* ¶ 1. During sentencing, the court did not address a finding required for consecutive sentencing by 17-A M.R.S. § 1256(3)(B) (2017)[15] that one crime was not committed to facilitate the other crime. *Id.* ¶¶ 18-19. As here, the applicability of the statutory requirement for sentencing findings was "presented for the first time on appeal." *Id.* ¶ 19.

[¶53] Addressing counsel's choice not to request statutorily required findings during or after the sentencing hearing, we observed: "Not requesting findings after the sentence was announced appears a competent tactical choice; a request for findings could have invited adverse findings, fully supported by the record . . . ." *Id.* ¶ 21 n.10. The same tactical considerations may have applied in this case.

[¶54] Reviewing for obvious error, *id.* ¶ 19, we held that consecutive sentencing to "fifty years in prison represents *no error of fact or law*, nor an abuse of discretion." *Id.* ¶ 24 (emphasis added). We should do the same here.

---

[15] Title 17-A M.R.S. § 1256(3)(B) (2017) is not materially changed from the statute referenced in *State v. Commeau*, 2004 ME 78, 852 A.2d 70.

### III. POTENTIAL UNANTICIPATED CONSEQUENCES

[¶55]  The defendant's tactical decision to accept the plea arrangement with the sentencing cap and then appeal when the cap was imposed, arguing failure to articulate the criteria stated in section 1252-C, presents a considerable risk of unanticipated consequences.  Had the defendant succeeded in convincing the Court that the sentencing court's failure to articulate the "basic" and the "maximum" sentences was error and that the error was not harmless, the matter would have been remanded to the trial court for resentencing.

[¶56]  The defendant is correct that on a sentence review, neither we nor the trial court can, on remand, increase a sentence that is subject to appeal.  *See* 15 M.R.S. § 2156(1-A) (2017).  However, on a vacate and remand, if the sentencing court is required to articulate its determination regarding the "basic" sentence and the "maximum" sentence, the court could and perhaps would determine that the recommended cap sentences were unacceptably low.  With the determination that the recommended sentence was too low, the court could reject the plea arrangement, allow Bean to withdraw his pleas, and set the matter for trial.  *See* M.R.U. Crim. P. 11A(d).  After trial, a new, higher sentence likely would be imposed should Bean be found guilty—a virtual

certainty considering his own admissions to operating while seriously under the influence.

[¶57]    The defendant, in his arguments, cites *State v. Palmer,* 468 A.2d 985, 987-988 (Me. 1983), to support the proposition that the sentencing court cannot increase a sentence once that sentence has been imposed. *Palmer,* which relied on United States Supreme Court precedent, was decided a quarter century before the United States Supreme Court's opinion in *Padilla v. Kentucky,* 559 U.S. 356 (2010).

[¶58]  Here, Bean is seeking a remand, post-conviction, for the trial court to make findings that could well require the trial court to reject the agreed sentencing cap and reset the case for trial, with a potentially higher sentence after trial, not bound by the plea agreement.   In rejecting "opening the floodgates" arguments apparently advanced by those concerned about the adoption of new grounds to challenge guilty pleas, the *Padilla* Court observed that most post-conviction challenges address convictions after trial, not after plea. *Padilla*, 559 U.S. at 372.  Then, addressing post-conviction challenges to pleas, the Court observed:

> The nature of relief secured by a successful collateral challenge to a guilty plea—an opportunity to withdraw the plea and proceed to trial—imposes its own significant limiting principle: Those who collaterally attack their guilty pleas lose the benefit of the bargain

> obtained as a result of the plea. Thus, a different calculus informs whether it is wise to challenge a guilty plea in a habeas proceeding because, ultimately, the challenge may result in a *less favorable* outcome for the defendant, whereas a collateral challenge to a conviction obtained after a jury trial has no similar downside potential.

*Id.* at 372-373.

[¶59]   The Court's warning must be taken soberly by one invoking a post-conviction challenge to a plea, or as here, seeking to undo, post-conviction, an agreement for a plea and a sentencing cap.  In essence, *Padilla* warns that a successful post-conviction challenge to a plea takes the case back to where it was before the plea.  *See id.*  If the plea resulted in a felony being reduced to a misdemeanor, the felony charge may be reinstated and prosecuted.  If charges were dismissed in exchange for the plea, the dismissed charges may be reinstated and prosecuted.  If the charge was amended to eliminate an aggravating factor or a mandatory minimum sentence requirement, those enhancements may be reinstated and prosecuted.  If the plea resulted in a lighter sentence, a more severe sentence may be imposed if there is a conviction after trial.  And if the case reverts to pre-plea status, bail requirements may again be imposed.

[¶60]   Thus, Bean's appeal taken here was not without considerable long-term risk if, in the short-term, he had prevailed.  Because the sentencing

court properly and appropriately respected the plea agreement reached by the prosecution and the defense and elected not to embarrass them by an honest articulation of the factors stated in section 1252-C, the trial court committed no error in its sentencing statement.  I concur in affirming the sentence.

---

Rory A. McNamara, Esq. (orally), Drake Law, LLC, Berwick, for appellant Andrew B. Bean

Andrew S. Robinson, District Attorney, and Joseph M. O'Connor, Asst. Dist. Atty. (orally), Office of the District Attorney, South Paris, for appellee State of Maine

Oxford County Unified Criminal Docket docket number CR-2015-414
FOR CLERK REFERENCE ONLY